**Mashell C. DEES, Plaintiff,**

v.

**JOHNSON CONTROLS WORLD SERVICES, INC.,**
**Defendant.**

Civil Action No. CV295–142.

United States District Court,
S.D. Georgia,
Brunswick Division.

Aug. 20, 1996.

John S. Myers, St. Marys, GA, Joseph Egan, Jr., Egan, Lev & Siwica, Orlando, FL, for plaintiff.

Wallace Eugene Harrell, Gilbert, Harrell, Gilbert, Sumerford & Martin, P.C., Brunswick, GA, Guy O. Farmer, II, Amy W. Littrell, Foley & Lardner, Jacksonville, FL, for defendant.

## ORDER

ALAIMO, District Judge.

Plaintiff, Mashell C. Dees ("Dees"), has brought the present sexual harassment action, seeking damages under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and state law. Currently before the Court is a motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, by Defendant, Johnson Controls World Services, Inc. ("World Services"). For the reasons stated below, World Services' motion will be **GRANTED.**

### FACTS

This action was filed by Dees due to the treatment that she received while employed by World Services in the Kings Bay Naval Submarine Fire Department ("fire station").[1] Dees was employed in the fire station as an administrative assistant. World Services has a contract with the U.S. Navy for the maintenance and operation of the Kings Bay Naval Submarine Base (including its fire station), located in St. Marys, Georgia.

---

1. A companion case was filed along with the case at bar. *See Clark v. Johnson Controls World Services, Inc.,* No. CV295–141 (1995). Susan A. Clark ("Clark") filed a suit factually similar to this case. World Services' motion for summary judgment in Clark's case was granted on June 24, 1996, —— F.Supp. —— by Order of the Court.

Dees claims that she was subjected to constant, unwelcome, and offensive sexual advances by World Services' male employees in violation of Title VII of the Civil Rights Act of 1964 and Georgia law.[2] She claims that those advances created a hostile work environment and that the treatment she received demeaned and degraded her and other women in World Services' employ. Specifically, Dees claims that four male co-workers created the hostile work environment. The co-workers are Waymon Rainey ("Rainey"), Chief of the Kings Bay Naval Submarine Base Fire Station, Jerry Jacobs ("Jacobs"), Assistant Chief of Fire Protection, Alfred Amerson ("Amerson"), Assistant Chief of Fire Protection, and Danny Stewart ("Stewart"), Captain in the Fire Protection Department.

Dees has been employed by World Services since November, 1989. From November, 1989, until May, 1990, Dees served in a temporary capacity as an "on call" secretary for the Human Resources Department. Dees became a full-time Employees Relations Clerk in May, 1990, and remained in that position until September, 1991. In September, 1991, she was transferred to the fire station and worked there for nearly three years, until August, 1994. Once the incidents leading to this suit were reported, Dees was transferred to the Transportation Department and then to the Supply Department. Dees is still employed in some capacity by World Services.[3]

In August, 1994, after considerable harassment in the fire station, Dees made a complaint to the Human Resources office of World Services. Specifically, she met with Carol Pierce ("Pierce") and Joe Lewis ("Lewis"), with whom she had worked during her tenure in that office. Dees went directly to the Human Resources office to complain of workplace harassment pursuant to the "company policy" in effect at that time. Dees claims that she chose not to complain of the harassment prior to August, 1994, because she was in fear of her supervisors, Rainey and Jacobs. Dees asserts that as a result of the pervasive harassment and improper behavior within the fire station, she was unable to work effectively in her position.

After her meeting with Lewis and Pierce, Dees was asked to speak with Art Robb ("Robb"), the Project Manager, concerning her allegations. Robb was unavailable to speak with Dees immediately, but met with her within three days following Dees' meeting with Lewis and Pierce. During their first meeting, Dees and Robb discussed all of her allegations. Beverly Edwards ("Edwards"), the Coordinator of the Exceeding in Customer Satisfaction (EICS) program, was also present during Dees' discussion with Robb. After that initial meeting with Robb, Dees returned to work at the fire station. She claims that Rainey became increasingly abusive to her following her discussion with Robb.

Roughly two weeks later, as a result of increasing harassment, she returned to the Human Resources office and once again discussed the entire matter with Lewis. Lewis informed Dees that an investigation had not yet been started and asked her to put everything in writing so that a formal investigation could be started. Lewis also asked Dees whether she wanted to speak with Robb at that time. Given her fragile emotional state during the conversation with Lewis, Dees declined to meet with Robb and went home. The following morning, Robb telephoned Dees and asked her—even pressured her—to

---

**2.** In her complaint, Dees alleges that World Services' employees are liable to her for battery, invasion of privacy, and false imprisonment. In February, 1996, Dees' motion to amend her complaint was granted by United States Magistrate Judge James E. Graham. (*See* Dkt. # 17). Among other things, Dees amended her complaint to include the additional state tort claims of negligent hiring, negligent retention, failure to maintain a workplace free from unwanted sexual misconduct and harassment, and intentional infliction of emotional distress. Since the Court will grant World Services' motion for summary judgment, a lengthy discussion of the state law claims is unnecessary.

**3.** In her complaint, Dees states that she was employed at the naval submarine base fire station from November, 1989, until August, 1994. (*See* Compl. at ¶ 5). However, her affidavit filed in opposition to World Services' motion for summary judgment clarifies her exact employment dates and locations. The Court accepts the employment facts in her affidavit to be true. (*See* Aff. of Dees at ¶ 3).

meet with him immediately to discuss her allegations. Dees again declined to meet with Robb on that date and, instead, telephoned her attorney.

Shortly thereafter, also in August, 1994, Dees met with Robb to give him a written summary of the incidents serving as the basis of her claims. During that second meeting with Robb, Dees was asked whether she could return to the fire station. She responded that "there was no way I would go back and work in the same department . . . with Chief Rainey. . . ." (Dep. of Dees at 78). Robb then immediately transferred Dees out of the fire station to the Transportation Department. In fact, at the conclusion of their meeting, Robb walked Dees across the street to meet her new supervisor, Pat Yochum. Dees was not required to work at the fire station after she filed her written complaint.

Within several weeks to a month, World Services sent two individuals to Kings Bay in order to investigate the matter. Linda Ramsey ("Ramsey") and Truli Beemis ("Beemis"), two female Human Resources Specialists from other company locations, conducted an investigation and interviewed Dees and other witnesses concerning the alleged harassment within the fire station. The investigation was completed under the direction of Bud Wellman ("Wellman"), the Corporate Manager for Human Resources–Operations. Dees was not questioned at her workplace, but rather spent over four hours discussing the matter with Ramsey and Beemis at a local Holiday Inn. Dees recounted, in detail, the alleged incidents of harassment to Ramsey and Beemis.

After the investigation was completed, Dees received a call from Ramsey and Wellman, who informed her that Jacobs and Stewart had been fired. She was also informed that one employee had been placed on an indefinite conditional employment status and that other employees had been formally reprimanded. The employee placed on indefinite conditional employment was Rainey.

Dees claims that World Services had no "step-by-step" written sexual harassment policy until the summer of 1994. Dees admits in her deposition, however, that World Services may have had a written sexual harassment policy as early as 1989, while she worked in Human Resources. (See Dep. of Dees at 90–91). Dees further admits that World Services did maintain a one-page, written sexual harassment policy, which was required to be posted throughout the company, as early as 1993. (See Aff. of Dees at 5).[4] She also admits that sometime between 1993 and 1994, the entire fire station, herself included, received sexual harassment training.[5] Dees states that other women filed complaints alleging sexual harassment prior to her filing a complaint. She also admits, however, that she was largely unaware of the substance of the other complaints.[6]

Dees is still employed with World Services and has received pay raises and above average performance critiques from her current supervisor, Frank Smith ("Smith"). In her present position, Dees has had one isolated problem involving another male co-worker.[7]

---

4. Although Dees asserts that Rainey would not allow the policy to be posted in the fire station, she had actual notice of a written policy prohibiting sexual harassment in the workplace as early as either January or February, 1993. (See Aff. of Dees at 5).

5. There is some confusion in the record concerning the level of involvement that Dees had in these training seminars. It is clear that Dees attended at least portions of the sexual harassment training. She contends, however, that her involvement was limited due to several interruptions during the training sessions.

6. In the companion case, Clark filed a suit substantially similar to this case. Clark first complained to World Services' Human Resources

office in March, 1994, alleging inter alia, violations of Title VII. Dees asserts that she did not complain to Human Resources prior to August, 1994, because she feared reprisal from her superiors. Dees also claims that she felt her complaint would not be handled appropriately because of Clark's lack of success in her complaint to Human Resources. The Court does not understand how Dees could have used Clark's situation as a factor in her decision-making if Dees was unaware of the substance of Clark's claims at the time of Clark's complaint. See Dep. of Dees at 113.

7. Dees claims that a male co-worker called her at home and stated that he was "in love" with her. Human Resources consulted with the employee

She reported the problem to Smith and the Human Resources office quickly settled the matter to her satisfaction.

## DISCUSSION

### I. Summary Judgment

Summary judgment requires the movant to establish the absence of genuine issues of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Lordmann Enter., Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1532 (11th Cir. 1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 335, 133 L.Ed.2d 234 (1995). After the movant meets this burden, "the non-moving party must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 524 (11th Cir.1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The non-moving party to a summary judgment motion need make this showing only after the moving party has satisfied its burden. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). The court should consider the pleadings, depositions and affidavits in the case before reaching its decision, Fed.R.Civ.P. 56(c), and all reasonable inferences will be made in favor of the non-movant. *Griesel v. Hamlin*, 963 F.2d 338, 341 (11th Cir.1992).

### II. Sexual Harassment Claims

■ Title VII of the Civil Rights Act of 1964 prohibits discrimination by an employer "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1) (1994). This prohibition extends to sexual harassment in the workplace. *Henson v. City of Dundee*, 682 F.2d 897 (11th Cir.1982).

### A. Quid Pro Quo

■ Dees does not specifically allege *quid pro quo* sexual harassment. *Quid pro quo* sexual harassment involves a supervisor's attempt to garner sexual consideration from an employee by offering job benefits as a *quid pro quo*. *See Mills v. Amoco Performance Prod., Inc.*, 872 F.Supp. 975, 989 (S.D.Ga.1994). *Quid pro quo* sexual harassment requires proof that plaintiff's acceptance of the harassment is an express or implied condition to receiving a job benefit or not receiving negative treatment. *Sowers v. Kemira, Inc.*, 701 F.Supp. 809, 823 (S.D.Ga. 1988) (finding a *prima facie* case of *quid pro quo* sexual harassment when plaintiff's rejection of supervisor's advances resulted in delay of promotion).

In the case at bar, however, no evidence has been presented and no claims have been specifically asserted to indicate that *quid pro quo* harassment has taken place. Under the facts of this case, the Court has little trouble in concluding that Dees was not a victim of *quid pro quo* sexual harassment.

### B. Hostile Work Environment

Viewing the evidence in the light most favorable to Dees, it is clear to the Court that she was harassed by the individuals named in her complaint. Dees became the brunt of many office jokes and rumors. She was grabbed, pushed, and even locked in a bathroom on at least one occasion. She was forced to endure behavior that the Court finds intolerable in any situation, but especially within the workplace.

■ Dees seeks to recover under the hostile work environment theory of sexual harassment. In order to make out a *prima facie* case of hostile work environment sexual harassment, a plaintiff is required to show (1) membership in a protected group; (2) subjection to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment affected a term, condition, or privilege of employment, in that it was sufficiently severe or pervasive "to alter the conditions of [the victim's] employment and create an abusive working environment,"

---

after Dees informed her supervisor of the incident. The employee ceased all offensive contact with Dees following the meeting with Human Resources. Dees claims that while other employees have made derogatory comments about her, she has had no other major conflicts in her new position.

*Henson,* 682 F.2d at 904; and (5) that the company knew or should have known of the harassment and failed to take remedial action. *Huddleston v. Roger Dean Chevrolet, Inc.,* 845 F.2d 900, 904 (11th Cir.1988); *Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1557 (11th Cir.1987). An employer can rebut this *prima facie* showing by "establishing that the events did not take place, or were not sufficiently severe to be actionable, or *by pointing to prompt remedial action reasonably calculated to end the harassment."* *Sanchez v. City of Miami Beach,* 720 F.Supp. 974, 980 (S.D.Fla.1989) (emphasis added). Therefore, the relevant question is not whether Dees was harassed, but rather whether the named defendant, World Services, knew or should have known of the harassment and reacted promptly.

▮ For the purposes of this motion, World Services does not expressly challenge the first four elements of Dees' *prima facie* case. Rather, World Services argues that it took prompt remedial action which prevents it from being held liable for Dees' hostile work environment claims. The Eleventh Circuit has held that:

> Strict liability is illogical in a pure hostile environment setting. In a hostile environment case, no *quid pro quo* exists. The supervisor does not act as the company; the supervisor acts outside "the scope of actual or apparent authority to hire, fire, discipline, or promote." Corporate liability, therefore, exists only through *respondeat superior;* liability exists where the corporate defendant knew or should have know of the harassment and failed to take prompt remedial action against the supervisor.

*Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1316 (11th Cir.1989), *reh'g denied,* 874 F.2d 821 (11th Cir.1989) (citing *Henson,* 682 F.2d at 905; *Bundy v. Jackson,* 641 F.2d 934, 943 n. 8 (D.C.Cir.1981)). Thus, the

proper standard to apply in a pure hostile environment case, as opposed to a *quid pro quo* case, is the *respondeat superior* standard. Although strict liability may, at times, be imposed on an employer for harassment caused by its employees, both hostile environment *and quid pro quo* sexual harassment must be present. *See Steele,* 867 F.2d at 1316. Since *quid pro quo* is not present in this case, direct liability cannot attach to World Services. Thus, to prevail against World Services, Dees must prove that it knew or should have known of the harassment and failed to take prompt remedial action.

The Court cannot imagine a quicker or more prompt response to a harassment complaint than the actions taken by World Services in the case at bar. Dees attempts to create a material issue by arguing that she was afraid to file a complaint because she felt that the complaint would not be investigated and that her supervisors, Rainey and Jacobs, would be informed of her actions. However, her suggestions that World Services had a practice of not investigating sexual harassment complaints is contradicted by her own testimony in this matter. In fact, Dees claims that another female co-worker, Clark, made similar claims and that an investigation *was* completed concerning those claims. (*See* Aff. of Dees at 10 (referencing the prior, unrelated investigation conducted by World Services)).[8] Under the facts presented, Dees' argument does not give rise to a genuine issue of material fact.

▮ Dees also attempts to avoid the dismissal of her harassment claims by arguing that Rainey and the other male co-workers named in her complaint were acting as agents for World Services when the harassment took place. The Eleventh Circuit has held that "in so called 'tangible job detriment' harassment cases, a supervisory employee acts as an agent of his employer un-

---

**8.** Dees claims that no investigation took place after Clark filed her sexual harassment complaint against Jacobs with the Human Resources office. However, Dees contradicts that assertion in the affidavit filed in support of her claims. In that affidavit, Dees states that "[d]uring the investigation of Clark's allegations against Jacobs ..." she was directed not to discuss the matter with

Human Resources. (*See* Aff. of Dees at 10; *see also* Dep. of Dees at 55). Dees cannot make *conflicting statements and expect the Court to assume both to be true.* The Court finds that there was an investigation made by World Services in prior sexual harassment claims filed before Dees filed her formal claim.

der Title VII when that employee uses the authority delegated to him by the employer to harass the plaintiff." *Vance v. Southern*, 863 F.2d 1503, 1514–15 (11th Cir.1989), *appeal after remand*, 983 F.2d 1573 (11th Cir. 1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 1110, 130 L.Ed.2d 1075 (1995). For World Services to be directly liable under this theory, Dees must show that the male co-workers in the fire station used authority actually delegated to them by World Services to make or threaten to make employment decisions detrimental to Dees. *Id.* at 1515 (citing, *Sparks*, 830 F.2d at 1559). Agency theory as a means for direct liability, however, must fail in the case at bar since Dees has not shown that any of the individuals named in her complaint used authority actually delegated to them by World Services to make employment decisions or create a hostile work environment detrimental to Dees. In fact, Dees stated that Rainey had given her good evaluations and that she had received raises and a Presidential Award while working in the fire station. (*See* Dep. of Dees at 116–17; 143). Although the men named in her complaint may have harassed Dees, their actions fell outside the scope of their employment.

■ Once Dees filed a written complaint alleging inappropriate conduct and sexual harassment, World Services not only took prompt, but *immediate*, remedial action. Dees was personally escorted to a new job assignment on the day that she turned in her written complaint to the Human Resources office. Once a more permanent position could be established within the company, Dees was transferred and has continued her employment with World Services since that transfer. An immediate investigation concerning Dees' allegations was conducted by World Services within a reasonable time. The company sent two female employees from different locations to complete a thorough investigation. Dees was interviewed in detail and away from the workplace by those two neutral investigators. When the investigation was completed, Dees was personally informed that Jacobs and Stewart had been fired. She was also personally informed that another employee (i.e., Rainey) was placed in a conditional employment status, which is the functional equivalent of probation. Dees was further informed that as a result of the investigation, other employees in the fire station were issued formal reprimands.

In her new position, Dees has received pay raises and above average evaluations. The Human Resources office has responded quickly and professionally to her subsequent work-related complaints. Finally, Dees has apparently received the complete support of her new supervisor.

The problems that Dees encountered during her employment at the fire station were more than unfortunate. The Court fully agrees that she should not have had to endure any harassment while working for World Services. Given Dees' prior experience in the Human Resources office and her knowledge of the sexual harassment policies, albeit briefly written at first, she could have made her concerns known to World Services sooner than August, 1994. Once she lodged a formal complaint in writing, World Services acted swiftly to investigate the matter and to ameliorate the working conditions within the fire station. Moreover, Dees cannot, in good faith, claim that she feared making her own claim based upon the outcome of Clark's complaint. Dees admits to having little knowledge of the substance of Clark's complaint until after the matter had been resolved.

Viewing the evidence in the light most favorable to Dees, the non-movant, the Court concludes that World Services not only took prompt, but immediate remedial action to resolve Dees' sexual harassment complaint. Summary judgment for World Services will be **GRANTED** on Dees' Title VII sexual harassment claims.

### III. *State Law Claims*

Dees has also alleged numerous state law claims against World Services. Since the federal issues pending in this litigation have been disposed, the Court believes that the remaining state law issues should be left to the courts of Georgia. The Court declines to retain discretionary supplemental jurisdiction over the remainder of this case. *See* 28 U.S.C. § 1367(c)(3).

868

## CONCLUSION

The Court has given careful consideration to the law governing Dee's claims and to World Services' motion for summary judgment. For the reasons stated above, Defendants' motion for summary judgment is hereby **GRANTED**.

**SO ORDERED.**