**Jacqueline HAZEL, Plaintiff,**

v.

**The SCHOOL BOARD OF DADE COUNTY, FLORIDA and William E. Clarke, III in his individual capacity, Defendants.**

**No. 97–689–CIV.**

United States District Court,
S.D. Florida,
Miami Division.

May 8, 1998.

Thomasina H. Williams, Law Offices Williams & Associates, P.A., Miami, FL, for Plaintiff.

Phillis O. Douglas, School Board Attorney, Miami, FL, W. George Allen, Co–Counsel for Defendant Clarke, Fort Lauderdale, FL.

### ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Defendants' Motion to Dismiss Plaintiff's Complaint (DE 4).

UPON CONSIDERATION of the motion, responses, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

### I. Background [1]

Plaintiff Jacqueline Hazel ("Hazel") began working for the School Board of Dade County ("School Board") in June of 1984. She began working at Northwestern High School ("Northwestern") in 1989. Beginning in 1993, Hazel served as Student Activities Director for Northwestern. Her responsibilities as Activities Director included planning and administering the extracurricular activities and programs of the school.

William Clarke ("Clarke") became the Principal for Northwestern in 1995. The Principal must approve and authorize all expenditures of school funds in connection with student activities at school. Therefore, as Activities Director, Hazel had frequent contact with Clarke.

Hazel alleges that shortly after Clarke's arrival he began sexually harassing her. Clarke allegedly made comments about Hazel's physical appearance, stared at her in a sexual manner, and propositioned her to have sex with him. He said things like "give me a chance," "good things come to those who wait," and that she would "regret waiting so long once [she had] been with [him]." Hazel also alleges that Clarke threatened that she would regret not having sex with him.

Hazel repeatedly rejected Clarke's alleged sexual advances and informed him that the sexual comments were inappropriate and unwelcome. Hazel alleges that Clarke generally would mock, ignore, or laugh at her attempts to get him to stop his alleged harassment.

After repeatedly rejecting Clarke's advances, Hazel alleges that Clarke retaliated against her by terminating her position as sole Activities Director. In 1995, Clarke ordered that the duties and responsibilities of the Student Activities Director be assumed by a committee, of which Hazel was only one member. Hazel additionally alleges that some of her other responsibilities were reassigned to other teachers as a result of her rejection of Clarke. Clarke initiated many of these reassignments without informing Hazel.

Hazel claims that Clarke's sexual harassment became so severe that she became reluctant to go into Clarke's office alone. Consequently, she would ask other Northwestern staff members to accompany her when she dealt with Clarke.

Eventually, Hazel informed the previous Principal at Northwestern, George Koonce ("Koonce"), of the alleged harassment.[2] At the time, Koonce was a School Board administrator. As a result, Koonce spoke with Clarke about his behavior.

Another complaint regarding Clarke was also filed with the School Board. Dr. Jeffrey Swain ("Swain") sent a letter to Superintendent Octavio Visiedo ("Visiedo") discussing

---

1. Unless otherwise noted, the facts mentioned in this Order are as alleged in Hazel's complaint.

2. The correspondence between Hazel and Koonce is attached to Hazel's Complaint. All three letters were also sent to School Board Superintendent Octavio Visiedo.

Clarke's alleged sexual harassment of Hazel and other Northwestern female employees. Visiedo responded to Swain's letter by saying that "appropriate review has been initiated." [3] The School Board never interviewed Hazel about her allegations of sexual harassment, investigated the allegations, or disciplined Clarke.

Hazel further alleges that Clarke intensified his harassment after he learned that she had complained to the School Board. He routinely criticized her performance, failed to inform her of school activities which concerned her, embarrassed and humiliated her in front of her coworkers, and routinely used profane language when addressing her. Also, Clarke refused to allow Hazel to work the summer of 1996.

Right before the 1996–97 school year, Clarke informed Hazel that she would no longer be the Activities Director and assigned her to be a classroom teacher. Hazel was demoted despite receiving the highest possible performance rating for the previous year. During her thirteen year career as an educator Hazel had never been a classroom teacher. Moreover, Hazel was not certified to teach the class she was assigned. Hazel requested a written explanation for her involuntary transfer to classroom teaching, but still has not received a response. Due to her not being allowed to work the summer of 1996 and her loss of the Activities Director job, Hazel lost income.

During the Fall of 1996, Clarke requested that Hazel interview for the position of Activities Director. Hazel alleges that this interview was not legitimate. Hazel claims that Clarke, who was a member of the committee which was to select the Director, had already decided who was going to be hired. In fact, despite Clarke telling her during the interview that the hiring decision would be made the following week, Hazel received a letter that same afternoon telling her that she did not get the job.

On March 18, 1996, Hazel filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). On December 18, 1996, the EEOC issued Hazel a Notice of Right to Sue. Accordingly, Hazel

brings this suit against the School Board and Clarke, in his individual capacity.

## II. Motion to Dismiss Standard

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *See Milburn v. United States,* 734 F.2d 762, 765 (11th Cir.1984). On such a motion to dismiss, the Court notes that it must construe the complaint in the light most favorable to the plaintiff and accept the factual allegations as true. *See SEC v. ESM Group, Inc.,* 835 F.2d 270, 272 (11th Cir. 1988). Further, the court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (citations omitted); *The South Florida Water Management Dist. v. Montalvo,* 84 F.3d 402, 406 (11th Cir.1996). Nonetheless, to withstand a motion to dismiss, it is axiomatic that the complaint must allege facts sufficiently setting forth the essential elements of a cause of action.

### *Counts I, II, and III: Subject Matter Jurisdiction*

■ 42 U.S.C. § 2000e(b) allows a person to bring suit against an employer who "has fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in their current or preceding calendar year, and any agent of such a person ...." The School Board argues that Hazel failed to allege that the School Board employs fifteen (15) or more employees. Hazel responds that paragraph 6 of the Complaint states that the School Board is charged with administering the public school system in Dade County, Florida, which includes Northwestern High School. Additionally, Hazel's EEOC Charge of Discrimination, which is Exhibit A of the Complaint, expressly lists the number of employees at Northwestern as between 201 and 500. Paragraph six and Exhibit A are sufficient to satisfy Hazel's jurisdictional requirements under § 2000e(b). *See Brown v. City of*

---

3. A copy of this response was also sent to Hazel.

*Miami Beach,* 684 F.Supp. 1081, 1082–83 (S.D.Fla.1988).

### Count II: Sexual Harassment—Quid Pro Quo under Title VII

■ To state a claim for *quid pro quo* sexual harassment a plaintiff must allege the following elements: (1) the employee belongs to a protected class; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the employee's reaction to the harassment complained of affected tangible aspects of the employee's compensation, terms, conditions, or privileges of employment; and (5) resondeat superior. *Henson v. City of Dundee* 682 F.2d 897, 909 (11th Cir.1982). The School Board argues that Hazel has failed to allege any facts which establish that Hazel's reaction to the alleged harassment affected tangible aspects of her compensation, terms, conditions, or privileges of employment. Hazel must allege facts which establish that she was "deprived of a job benefit which she was otherwise qualified to receive because of the employer's use of a prohibited criterion in making the employment decision." *Henson,* 682 F.2d at 909.

■ *Quid pro quo* sexual harassment can be explicit or implicit. *Nichols v. Frank,* 42 F.3d 503 (9th Cir.1994). To determine whether implicit *quid pro quo* sexual harassment has occurred, a nexus between the alleged harassment and the affected term of employment must exist. *Id.* at 512–13. "The tighter the nexus between a discussion about job benefits and a request for sexual favors, the more likely that there has been an 'implicit' conditioning by the harasser." *Id.* The frequency of the supervisor's advances, the length of time over which the advances occurred, and the strength of the nexus between the advances and the discussion of job benefits or detriments have all been considered relevant by other courts. *See Johnson v. Wal–Mart Stores, Inc. et al.,* 987 F.Supp. 1376, 1391 (M.D.Ala.1997); *Fowler v. Sunrise Carpet Industries, Inc.,* 911 F.Supp. 1560, 1578 (N.D.Ga. 1996).

■ Viewing the facts in the light most favorable to the plaintiff, the Court finds that Hazel has stated a claim for *quid pro quo*

sexual harassment. Clarke became Principal of Northwestern in the Summer of 1995. Complaint ¶ 13. During the Summer of 1995 and throughout the following fall, Clarke allegedly made unwelcome sexual advances that Hazel repeatedly rejected. Complaint ¶ 14. That fall Clarke gave the responsibilities of the Activities Director to a committee of which Hazel was made a member. Consequently, Hazel was stripped of sole responsibility for school activities. Complaint ¶ 25. Eventually, Hazel was removed as the Student Activities Director position altogether, causing her to lose the $3,0000 supplement that goes with that position. Hazel was also denied an opportunity to work the Summer of 1996, as she had done for the prior two summers. This also deprived Hazel of additional income. Clarke's reassigning of Hazel to the classroom may also be viewed as a demotion. Taking all allegations as true, the Court finds that a sufficient nexus exists between the alleged harassment which began shortly after Clarke's arrival and Hazel's subsequent removal as sole Activities Director. Accordingly, Hazel has stated a claim for *quid pro quo* sexual harassment under Title VII.

### Counts IV, V, and VI: Employment Discrimination under Title IX

■ "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681 ("Title IX"). The School Board argues that Hazel cannot proceed with a private cause of action for employment discrimination under Title IX because Title VII[4] provides the exclusive remedy. This is a question of first impression in this Circuit.

Courts are split as to whether Title IX creates a private right of action for employment discrimination claims against federally funded education programs. *Compare Preston v. New River Community College,* 31 F.3d 203, 206 (4th Cir.1994) (recognizing a cause of action under Title IX), *and Bedard v. Roger Williams University,* 989 F.Supp.

**1354**

94 (D.R.I.1997), *and Nelson v. University of Maine System*, 923 F.Supp. 275 (D.Me.1996) *with Lowrey v. Texas A & M University System*, 117 F.3d 242 (5th Cir.1997)(recognizing no cause of action under Title IX), *and Lakoski v. Thomas M. James, M.D.*, 66 F.3d 751 (5th Cir.1995), *and Cooper v. Gustavus Adolphus College*, 957 F.Supp. 191 (D.Minn. 1997), *and Howard v. Board of Education of Sycamore Community Unit School District*, 893 F.Supp. 808 (N.D.Ill.1995), *and Storey v. Board of Regents*, 604 F.Supp. 1200 (W.D.Wis.1985).

The courts holding that no private right of action exists for employment claims under Title IX were concerned with creating an opportunity to circumvent the detailed administrative process of Title VII. *Lakoski*, 66 F.3d at 755 (citing *Great American Federal Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 378, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979)). This Court agrees. Consequently, this Court believes that the line of cases that hold that Title VII is the exclusive remedy for employment discrimination claims on the basis of sex in federally funded educational institutions are the better reasoned cases. Accordingly, Counts IV, V, and VI are DISMISSED WITH PREJUDICE.

### Counts VII and VIII: Section 1983 Claims Against the School Board

 42 U.S.C. § 1983 (as amended), provides:

> Every person who, under color of an statute ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Municipalities and other forms of local government are "persons" within the meaning of this statute. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). Section 1983 creates a cause of action "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Additionally, municipal liability can attach to a single decision if it is alleged that the city caused a constitutional tort through "a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." *Id.*, at 690, 98 S.Ct. 2018.

Therefore, there are two ways in which Hazel can prove municipal liability. Hazel can "prove [liability through] the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute "custom or usage" with the force of law.'" *Praprotnik*, 485 U.S. at 127, 108 S.Ct. 915 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Also, Hazel can demonstrate municipal liability by showing that those who allegedly violated her constitutional rights were final decisionmakers. *Praprotnik*, 485 U.S. at 127, 108 S.Ct. 915.

 Hazel has not alleged facts that suggest a "custom" of sexual discrimination within the School Board. Therefore, in order for a § 1983 claim to exist against the School Board, Hazel must allege that a final decisionmaker for the School Board committed a constitutional tort against her. "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Praprotnik*, 485 at 127, 108 S.Ct. 915.

 Taking Hazel's allegations as true, there are only four possible final decision makers.[5] First, if the School Board ratified Clarke's alleged harassment it would be a final decision maker. The Complaint alleges that "the School Board is a political subdivision of the State of Florida, charged with administering the public school system in Dade County, Florida ...." Complaint, ¶ 6. Accepting that as true, the School Board is a final decision maker. However, Hazel does

---

5. State law determines who has final policymaking authority. *Praprotnik*, at 123, 108 S.Ct. 915.

not allege any facts showing that the School Board ratified Clarke's alleged conduct.

■ Second, the Complaint alleges that Dr. George Koonce knew of the harassment and did nothing about it other than talk to Clarke. Consequently, if Koonce had final decisionmaking authority for handling such matters, then his relative inaction would be a ratification of Clarke's alleged action and therefore would make the School Board liable. However, the Complaint does not allege that Koonce has unreviewable authority over personnel decisions. Therefore, Koonce cannot, as the Complaint reads now, create School Board liability through his actions.

Third, if School Board Superintendent Octavio Visiedo is a final policy maker, then his knowledge may have ratified Clarke's alleged behavior. Again, the Complaint does not allege that he had unreviewable authority.

Finally, if Clarke has unreviewable authority, then the School Board could be liable for his unreviewable actions. However, the Complaint does not allege such facts. Hazel alleges that Clarke is a "managerial agent of the School Board to whom the School Board delegated managerial decisions regarding the personnel and operation of Northwestern." If these delegated decisions are unreviewable by the School Board, then Clarke is a final decisionmaker. However, the Complaint must allege more than an agency relationship between Clarke and the School Board. *See Monell*, 436 U.S. at 694, 98 S.Ct. 2018 (rejecting the theory of respondeat superior as applied to § 1983). The Complaint makes no such allegation. Accordingly, Counts VII and VIII are DISMISSED WITHOUT PREJUDICE.[6]

### Counts IX and X: Section 1983 Liability for Clarke

■ Section 1983 claims require more detailed pleading when an individual defendant is involved. *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992). The Complaint is unclear as to what statutory or constitutional violation is alleged under § 1983. The Complaint reads: "Clarke acted under color of state law in depriving Hazel of her federally protected rights to be free of sexual harassment and

sex discrimination in her workplace." Complaint, ¶ 142. The Complaint also states, "Clarke acted under color of state law in depriving Hazel of her federally protected rights to be free of retaliation for complaining about sexual harassment and sex discrimination in her workplace." Complaint, ¶ 147. These allegations are insufficient to inform the School Board or the Court as to what constitutional or statutory violation is alleged. Accordingly, Counts IX and X are DISMISSED WITHOUT PREJUDICE.

### Count XI: Freedom of Speech—Retaliation

■ To state a claim for First Amendment retaliation Hazel must allege facts which show that the speech for which she was retaliated against affects a matter of public concern. *Morgan v. Ford*, 6 F.3d 750, 753–54 (11th Cir.1993). "For an employee's speech to rise to the level of public concern, it must relate to a matter of political, social, or other concern to the community." *Watkins v. Bowden*, 105 F.3d 1344, 1353 (11th Cir.1997). Therefore, this Court must determine if the alleged protected speech was primarily in furtherance of a public concern or a private interest. *Morgan*, 6 F.3d at 754. As in *Watkins*, Hazel's speech was as an employee rather than in her "role as citizen." 105 F.3d at 1353 (quoting *Kurtz v. Vickrey*, 855 F.2d 723, 727 (11th Cir.1988)). Hazel was simply reporting her own personal alleged harassment. Accordingly, Count XI is DISMISSED WITH PREJUDICE.

### Count XII: Equal Protection under the Florida Constitution

■ Hazel claims that the alleged sexual harassment is a violation of the Florida Constitution. Complaint, ¶ 155. Article I, § 2, of the Florida Constitution states in relevant part: "No person shall be deprived of any right because of race, religion or physical handicap." Hazel has alleged no facts which would create a cause of action under this provision. Moreover, Hazel has cited no case law which would indicate that a cause of action for sexual harassment is created under this section of the Florida Constitution. Ac-

---

**6.** If Hazel chooses to file an amended complaint, she needs to specify which specific constitutional

or statutory right has been violated under § 1983.

cordingly, Count XII is DISMISSED WITH PREJUDICE.

### Count XIII: Florida Civil Rights Act

Hazel alleges in Count XIII that Clarke's conduct is a violation of the Florida Civil Rights Act. § 760.01 *et seq.* The School Board argues that this Count must be dismissed for the Hazel's failure to allege that she has complied with all the prerequisites of the Florida Civil Rights Act. Specifically, the School Board claims that Hazel has not alleged in the Complaint that she filed a charge of discrimination with the Florida Commission on Human Rights or that the School Board employs at least fifteen employees. However, Hazel alleges that she has "complied with all conditions precedent to bringing this action." Complaint, ¶ 3. Taken as true, the Court finds that Hazel has met her requirements under the Florida Civil Rights Act. Also, as stated above, Hazel has sufficiently plead that the School Board employs at least fifteen employees. Accordingly, Hazel has stated a claim under the Florida Civil Rights Act.

### Counts XIV, XV, and XVI: Negligent Supervision and Retention and Intentional Infliction of Emotional Distress

 The School Board argues that these counts should be dismissed for Hazel's failure to give notice of this suit to the Department of Insurance. Florida law requires that a plaintiff who sues a political subdivision of the state of Florida give written notice to the Department of Insurance within three years after a claim arises. Section 768.28(6)(a), Fla. Stat. (Supp.1996). Hazel's complaint has failed to allege that it has given such notice.[7] Accordingly, Counts XIV, XV, and XVI are DISMISSED WITHOUT PREJUDICE.

### CONCLUSION

Based on the foregoing, it is ORDERED AND ADJUDGED that the Motion be, and the same is hereby, GRANTED IN PART and DENIED IN PART.

It is FURTHER ORDERED AND ADJUDGED that Plaintiff has stated a claim

with respect to Counts I, II, III, IV, and XIII. Counts V, VI, XI, and XII are DISMISSED WITH PREJUDICE. Counts VII, VIII, IX, X, XIV, XV, and XVI are DISMISSED WITHOUT PREJUDICE. Plaintiff Hazel is directed to file an Amended Complaint within ten (10) days of this Order.

---

7. Failure to specifically allege that timely written notice had been given to the Department of Insurance warranted dismissal. *Wright v. Polk*

*County Public Health Unit,* 601 So.2d 1318, 1319 (Fla. 2d DCA 1992).