Michael C. SMILEY, Plaintiff,

v.

JEKYLL ISLAND STATE PARK
AUTHORITY, Defendant.

Civil Action No. CV297–201.

United States District Court,
S.D. Georgia,
Brunswick Division.

July 2, 1998.

Richard D. Phillips, Ludowici, GA, for Plaintiff.

John Eric Bumgartner, G. Todd Carter, Whelchel, Brown, Readdick & Bumgartner, Brunswick, GA, for Defendant.

## ORDER

ALAIMO, District Judge.

Plaintiff, Michael C. Smiley ("Smiley"), brings this action against Defendant, Jekyll Island State Park Authority ("Jekyll Island"), seeking damages for alleged sexual harassment. In his complaint, Plaintiff alleges sexual harassment and retaliation in violation of 42 U.S.C. § 2000e *et seq.* (1994) ("Title VII"), retaliation, intentional infliction of emotional distress, battery, sexual battery and slander. Currently before the Court is Jekyll Island's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, the Defendant's Motion for Summary Judgment will be **GRANTED IN PART** and **DENIED IN PART**.

## FACTS

In January 1996, Jekyll Island hired Smiley as the Convention Center Staff Supervisor. He worked under the supervision of Ken Opel ("Opel") and Pam Jeffries ("Jeffries"). Plaintiff claims that he was sexually harassed by Jeffries. He testified that she was flirtatious toward him. Jeffries' behavior involved hugging Plaintiff, kissing him, touching his genitals, and engaging in sexual intercourse with him. During these encounters, Jeffries often would mention her role at Jekyll Island, as well as her father's influence over Plaintiff's position. At some point, Plaintiff began to refuse Jeffries' sexual overtures. He contends that Jeffries then began to spread rumors about him that led to his termination. Defendant, however, claims that Smiley was not an exceptional employee and that he attempted to distribute controlled substances, cocaine and pain killers, in the workplace.

Defendant contends that a specific incident on April 13, 1996 precipitated Plaintiff's termination. Smiley had asked to leave early to attend a party at his house. His request was denied. However, on that afternoon, Smiley went home early because he was complaining of a headache. Later that evening, another employee, Patti Corbitt ("Corbitt"), went to Smiley's house to pick up some keys. Corbitt contends that when she arrived, Smiley was outside of the house drinking a beer and offered her some controlled substances. Later that week when Opel informed Smiley of his termination, Smiley asserted that he was being terminated because his romantic relationship with Jeffries had turned sour. Opel decided to investigate Smiley's allegations before terminating him and, instead, placed Smiley on suspension. When the investigation failed to corroborate Smiley's accusations, he was terminated.

Following Smiley's termination, his accusations against Defendant and its employees continued. He filed two lawsuits in state court against Jimmy Bradley and Jeffries. Both suits were voluntarily dismissed. Smiley also filed a charge with the EEOC and received his right to sue letter. Smiley made criminal accusations as well. In August 1996, Smiley contacted the Georgia State Patrol to complain that Jeffries and other former co-workers were stalking him, but the complaint was dismissed as unfounded. In September 1996, Smiley filed a police report that someone had thrown a fire bomb at his house and suggested that Jeffries may have been responsible. After the Georgia Bureau of Investigation looked into the matter, it was discovered that Smiley had thrown the bomb at his own house. Smiley confessed and pled guilty to arson.[1]

---

1. Smiley testified that his confession was neither true nor voluntary. (Smiley Dep. at 64–66).

**1380**

## DISCUSSION

### I. Summary Judgment

Defendant argues that it is entitled to summary judgment because Plaintiff has not presented sufficient evidence of sexual harassment and retaliation and that the state law claims are barred by the Eleventh Amendment to the United States Constitution. (Def.'s Br. Supp. Summ. J. at 11). Summary judgment requires the movant to establish the absence of genuine issues of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Lordmann Enters., Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1532 (11th Cir. 1994). After the movant meets this burden, "the non-moving party must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Co.*, 32 F.3d 520, 524 (11th Cir.1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The non-moving party to a summary judgment motion only must make this showing after the moving party has satisfied its burden. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

The Court should consider the pleadings, depositions, and affidavits in the case before reaching its decision, Fed.R.Civ.P. 56(c), and all reasonable inferences will be made in favor of the non-movant. *Griesel v. Hamlin*, 963 F.2d 338, 341 (11th Cir.1992). However, to survive summary judgment, the plaintiff must present more than a mere "scintilla of evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202, 214 (1986). "[T]here must be evidence on which the jury could reasonably find for the plaintiff." *Id.See also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir.1996).

### II. Sexual Harassment

 Title VII of the Civil Rights Act of 1964 prohibits discrimination by an employer "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1) (1994). *See Oncale v. Sundowner Offshore Servs., Inc.*, —— U.S.

——, ——, 118 S.Ct. 998, 1001, 140 L.Ed.2d 201 (1998). Sexual harassment is within the purview of Title VII. *Henson v. City of Dundee*, 682 F.2d 897 (11th Cir.1982).

 There are two forms of sexual harassment that are actionable under Title VII. *Fleming v. Boeing Co.*, 120 F.3d 242, 244 (11th Cir.1997); *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1315 (11th Cir.1989). The first type is *quid pro quo* sexual harassment, which "involves a supervisor's attempt to garner sexual consideration from an employee by offering job benefits as a *quid pro quo*." *Dees v. Johnson Controls World Servs. Inc.*, 938 F.Supp. 861, 865 (S.D.Ga.1996) (citing *Mills v. Amoco Performance Prod., Inc.*, 872 F.Supp. 975, 989 (S.D.Ga.1994)). The second form is sexual harassment that creates a hostile work environment, that is, a "workplace [so] permeated with discriminatory intimidation, ridicule, and insult that . . . it alter[s] the conditions of the victim's employment. . . ." *Oncale*, 118 S.Ct. at 1001 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295, 301 (1993)). *See also Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49, 59–60 (1986). Since Smiley does not delineate what form of sexual harassment he allegedly suffered, the Court will analyze both types below.

### A. Quid Pro Quo Sexual Harassment

Defendant contends that Plaintiff has failed to show that any aspect of his employment was conditioned on his acceptance of Jeffries' sexual advances. (Def.'s Br. Supp. Summ. J. at 15). Plaintiff, however, claims that Jeffries emphasized her position of authority while making sexual overtures. (Smiley Dep. at 164, Ex. 4).

 *Quid pro quo* sexual harassment involves a supervisor's extortion of sexual favors from an employee by offering or threatening job benefits. *Steele*, 867 F.2d at 1316; *Amoco Performance Prod.*, 872 F.Supp. at 989. *Quid pro quo* sexual harassment requires proof that plaintiff's acceptance of the harassment is an express or implied condition to receiving a job benefit or not receiving negative treatment. *Sowers v. Kemira, Inc.*, 701 F.Supp. 809, 823 (S.D.Ga.

1988). The Court should consider the strength of the relationship between the sexual demands and the job benefits. *Hazel v. School Board of Dade County*, 7 F.Supp.2d 1349, 1353 (S.D.Fla.1998). Generally, when the supervisor discusses the employee's status at the time of the sexual advances, *quid pro quo* harassment exists. *Id.; Johnson v. Wal–Mart Stores, Inc.*, 987 F.Supp. 1376, 1390 (M.D.Ala.1997). A plaintiff need not demonstrate that the employer had knowledge of the harassment since the employer is strictly liable for any *quid pro quo* harassment. *Farley v. American Cast Iron Pipe Co.*, 115 F.3d 1548, 1551 (11th Cir.1997); *Steele*, 867 F.2d at 1316.

 Smiley has produced sufficient evidence at this stage to persuade the Court that rebuffing Jeffries' advances may have led to his termination. Construing the facts in the light most favorable to Plaintiff, Jeffries made repeated sexual advances toward Plaintiff. (Opel Aff. ¶ 10; Opel Dep. at 27; Smiley Aff. ¶ 4; Smiley Dep. at 101, 106–7, 115–20, 202, Ex. 4; Yawn Dep. at 39–42). When she was making these sexual overtures, Jeffries would remind Plaintiff that she was his supervisor and would mention her father's position. (Smiley Dep at 164, Ex. 4). *See Hazel*, 7 F.Supp.2d at 1353; *Johnson*, 987 F.Supp. at 1390. Plaintiff felt implicit pressure to cooperate with Jeffries' demands and often was uncomfortable at work because of her behavior. (Smiley Dep. at 105, 108). Furthermore, Jeffries spread rumors about Plaintiff and discussed his termination with Opel. (Opel Dep. at 42; Jeffries Dep. at 22; Smiley Aff. ¶ 7). Courts have found genuine issues of material fact to exist in cases factually similar to this one. *See Virgo v. Riviera Beach Assocs. Ltd.*, 30 F.3d 1350, 1362–63 (11th Cir.1994) (affirming directed Verdict in favor of an employee who presented evidence that after sexual advances were rejected, her supervisor began spreading derogatory rumors about the employee); *Sowers*, 701 F.Supp. at 823 (finding a prima facie case of *quid pro quo* sexual harassment when the plaintiff's rejection of a supervisor's advances resulted in delay of promotion); *Mills v. Wex–Tex Indus., Inc.*, 991 F.Supp. 1370, 1380 (M.D.Ala.1997) (denying summary judgment when the supervisor made implicit threats and attempted to cre-

ate a sexual relationship through notes, calls, visits and physical conduct). Accordingly, the Court must deny Defendant's Motion for Summary Judgment concerning Smiley's claim of *quid pro quo* sexual harassment.

**B. Hostile Work Environment Sexual Harassment**

Defendant contends that Plaintiff has failed to establish a claim of hostile work environment. Specifically, Defendant argues that the alleged harassment was not severe or pervasive enough to alter the conditions of Plaintiff's employment. (Def.'s Br. Supp. Summ. J. at 17). Defendant also claims that it took prompt remedial action which prevents it from being held liable for Smiley's claims. (*Id.*) Plaintiff contends that he has established a prima facie case of hostile work environment harassment. (Pl.'s Br. Opp'n Summ. J. at 7).

 In order to make out a prima facie case of hostile work environment sexual harassment, a plaintiff must show: (1) membership in a protected group, (2) unwelcome harassment, (3) that the harassment was based on sex, (4) that the harassment affected a term, condition or privilege of employment, and (5) that the defendant is liable for the harassment. *Huddleston v. Roger Dean Chevrolet, Inc.*, 845 F.2d 900, 903–4 (11th Cir.1988); *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554, 1557 (11th Cir.1987); *Henson*, 682 F.2d at 903–5.

 A sexually hostile work environment must be both objectively and subjectively offensive. *Faragher v. City of Boca Raton*, —— U.S. ——, ——, 118 S.Ct. 2275, 2282–83, 141 L.Ed.2d 662 (1998). The conduct complained of must be extreme in order to change the terms and conditions of employment. *Id.* The harassment, though, does not need to rise to such a level that it causes the employee to suffer a nervous breakdown or seriously affect the employee's well-being. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–23, 114 S.Ct. 367, 370–71, 126 L.Ed.2d 295, 301–2 (1993). The Court must consider the totality of the circumstances to determine if the harassment was so severe and pervasive as to create a hostile work environment. *El-*

lis v. Wal–Mart Stores, Inc., 952 F.Supp. 1522, 1527 (M.D.Ala.1996).

Plaintiff has adduced sufficient evidence to raise a genuine issue of material fact as to whether Jeffries' behavior was so egregious as to constitute a hostile work environment. Viewing the evidence in the light most favorable to Plaintiff, Jeffries would invite him into her office, lock the door and make sexual advances. (Smiley Dep. Ex. 4). Jeffries disclosed to other employees that she was interested in Plaintiff. (Id.) Plaintiff felt uncomfortable in his work environment due to Jeffries' behavior. (Id. at 105, 108)

Furthermore, Plaintiff has presented evidence that would hold Defendant liable for the alleged sexual harassment conducted by Jeffries. The determination of employer liability is a question of fact. Sparks, 830 F.2d at 1554. Vicarious liability exists when a supervisor misuses her authority. Faragher, ––– U.S. –––, –––, 118 S.Ct. 2275, 2282–83. There has been sufficient evidence presented for a jury to find that Jeffries misused her position of authority.

### III. Retaliation

Defendant contends Plaintiff cannot establish a prima facie case of retaliation because he failed to establish that there was any adverse employment action taken. (Def.'s Br. Supp. Summ. J. at 21). Plaintiff alleges that Jeffries retaliated against him by slapping him, verbally abusing him, criticizing his job performance, and requiring a doctor's excuse for missed work. (Smiley Dep. at 154–55, 159). Title VII prohibits an employer from taking adverse employment action against an employee in retaliation for opposing discriminatory practices. 42 U.S.C.A. § 2000e–3(a) (1994). In order to establish retaliation, a plaintiff must prove: (1) that he engaged in statutorily protected expression, (2) that he suffered an adverse employment action, and (3) that there was a causal relationship between the expression and the adverse action. Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1196 (11th Cir.1997); Fleming, 120 F.3d at 248; Reynolds, 115 F.3d at 868.

Plaintiff's claims do not constitute adverse employment actions. The Eleventh Circuit, in a case involving retaliation in violation of the First Amendment, held that " '[a]dverse employment action' is broadly defined and as a matter of law includes not only discharges, but also demotions, refusals to hire, refusals to promote and reprimands." McCabe v. Sharrett, 12 F.3d 1558, 1563 (11th Cir.1994). This definition applies with equal force in a case where the alleged retaliation is in violation of Title VII. "Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions. Ultimate employment decisions include acts such as hiring, granting leave, discharging, promoting, and compensating." Mattern v. Eastman Kodak Co., 104 F.3d 702, 707 (5th Cir.), cert. denied, ––– U.S. –––, 118 S.Ct. 336, 139 L.Ed.2d 260 (1997) (quoting Dollis v. Rubin, 77 F.3d 777, 781–82 (5th Cir.1995)).

Plaintiff's allegations that Jeffries slapped him, verbally abused him, criticized his job performance and demanded a doctor's excuse are insufficient for the Court to find that he suffered any adverse employment action. See Mattern, 104 F.3d at 708 (holding that threats of discharge are not adverse employment actions); Dollis, 77 F.3d at 779–80 (holding that criticism and denial of certain benefits are not adverse employment actions); Landgraf v. USI Film Prods., 968 F.2d 427, 431 (5th Cir.1992), aff'd, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (holding that hostility from co-workers and anxiety from stolen tools do not constitute adverse employment actions); Malladi v. Brown, 987 F.Supp. 893, 918 (M.D.Ala.1997) (taking keys from an employee does not constitute an adverse employment action); McCoy, 966 F.Supp. at 1221 (finding that a new work schedule, hostility, transfer and increased monitoring do not constitute adverse employment actions); Dudley v. Metro–Dade County, 989 F.Supp. 1192, 1204–05 (S.D.Fla.1997) (holding that a falsified evaluation and hostility from co-workers are insufficient evidence of an adverse employment action); Murphy v. Yellow Freight Sys. Inc., 832 F.Supp. 1543, 1549–51 (N.D.Ga.1993) (finding no adverse employment action when the plaintiff presented evidence of rescheduling, increased monitoring of co-workers and

criticism). Accordingly, the Defendant's Motion for Summary Judgment as to the retaliation claim will be granted.

## IV. *Eleventh Amendment Immunity*

Defendant contends that Plaintiff's state law claims are barred by the Eleventh Amendment to the United States Constitution. (Def.'s Br. Supp. Summ. J. at 22). Plaintiff argues that Defendant is not a department or agency of the state. (Pl.'s Br. Opp'n Summ. J. at 10). However, the Court finds that the Eleventh Amendment bars Plaintiff's state law claims against the Defendant.[2]

The Eleventh Amendment provides that: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state." U.S. Const. amend. XI. This amendment has been construed to bar suits against a state, state agencies and state officials in federal court. *Hobbs v. Roberts*, 999 F.2d 1526, 1528 (11th Cir.1993); *Robinson v. Georgia Dep't of Transp.*, 966 F.2d 637, 638 (11th Cir.1992); *Fouche v. Jekyll Island–State Park Auth.*, 713 F.2d 1518, 1519 (11th Cir.1983).

 In order to determine if the Eleventh Amendment applies in this instance, the Court must ascertain if the Jekyll Island State Park Authority is an "arm of the state." [3] *Robinson*, 966 F.2d at 638; *Fouche*, 713 F.2d at 1519. The Court utilizes Georgia law in this determination and considers factors such as the state's degree of control over the entity and the fiscal autonomy of the entity. *Robinson*, 966 F.2d at 638–39; *Fouche*, 713 F.2d at 1519. The Eleventh Circuit in *Fouche* held that the Jekyll Island State Park Authority is an arm of the state for purposes of the Eleventh Amendment. 713 F.2d at 1519. Since Defendant is a state agency, it is immune from suit under the Eleventh Amendment. *Hobbs*, 999 F.2d at 1528; *Robinson*, 966 F.2d at 638; *Fouche*, 713 F.2d at 1519. Accordingly, Accordingly, summary judgment as to Plaintiff's state law claims is **GRANTED.**

## *CONCLUSION*

Having considered fully the positions asserted by the parties in this matter, the Court concludes that Defendant's Motion for Summary Judgment is **DENIED** as to Plaintiff's claims of sexual harassment and should be and is hereby **GRANTED** as to Plaintiff's retaliation and state law claims.

**2.** The Eleventh Amendment is inapplicable to claims brought under Title VII. *Fouche v. Jekyll Island–State Park Auth.*, 713 F.2d 1518, 1524 (11th Cir.1983).

**3.** Another exception to the prohibition of the Eleventh Amendment is when the state has waived its sovereign immunity. *See Robinson*, 966 F.2d at 640; *Fouche*, 713 F.2d at 1522. However, there is no allegation in this case that Georgia has waived its sovereign immunity.