**Ginger MANNELL, Plaintiff,**

v.

**The AMERICAN TOBACCO COMPANY, Defendant.**

**Civ. A. No. 3:94CV269.**

United States District Court, E.D. Virginia, Richmond Division.

Oct. 12, 1994.

Vickey Ann Verwey, David R. Simonsen, Jr., Richmond, VA, for Ginger D. Mannell.

Dana Lewis Rust, William Carter Younger, Terrence Mitchell Bagley and Rodney A. Satterwhite, McGuire, Woods, Battle & Boothe, Richmond, VA, for American Tobacco Co.

### MEMORANDUM

MERHIGE, Senior District Judge.

This matter comes before the Court on defendant's motion for summary judgment. Defendant in this action is the American Tobacco Company ("ATC"). Plaintiff is Ginger Mannell. On April 22, 1994, plaintiff filed this action alleging: (1) harassment in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., (2) discharge in violation of the ADA, (3) discharge in violation of the Employee Retirement Income Security Act of 1974, ("ERISA"), 29 U.S.C. §§ 1001 et seq., (4) wrongful discharge against Virginia public policy, and (5) breach of contract. Defendant filed the instant motion on September 16, 1994. The motion has been fully briefed and is ripe for disposition by the Court.

Plaintiff alleges jurisdiction over counts one and two pursuant to the ADA, 42 U.S.C. §§ 12101 et seq., and 42 U.S.C. § 1981a. Jurisdiction over count three is based on ERISA, 29 U.S.C. §§ 1001 et seq. Plaintiff alleges jurisdiction over the state claims, counts four and five, because they arise from the same transaction and occurrences as the federal claims.

### Background

Mannell began working for ATC in 1986 as an accounting assistant in the Accounts Payable section of the Accounting Department. She was transferred to the Travel Expense section in 1988 and was promoted to Accountant in that section in November, 1992. The Travel Expense section had fallen behind in processing accounts, and, in February, 1993, ATC appointed Sandra Fisher to the position of Manager of the Travel Expense section to improve efficiency.

Fisher asked the employees to work Saturday, February 6, 1993. Mannell had never offered any doctor's excuse to indicate that she could not work overtime, but she approached Fisher and told her that she tired easily and working on a Saturday might exacerbate that condition. Fisher never threatened Mannell with disciplinary action if she did not work on Saturday. Mannell worked Saturday, February 6, but took a four day weekend the following week. After the four day weekend, Mannell returned to work for one day and then went on a three week leave of absence. Mannell reported that the leave was due to the fact that she was suffering from Chronic Fatigue Immune Deficiency Syndrome ("CFIDS") and upon her return to work, provided ATC with a doctor's note diagnosing her with CFIDS.[1] Plaintiff alleges that upon her return from

---

1. CFIDS qualifies as a disability as defined in section 3(2) of the ADA, 42 U.S.C. § 12102(2).

leave Fisher suggested she might want to consider working in another department, another company, or another field.

Plaintiff claims that CFIDS caused depression and loss of cognitive ability and substantially limited her major life activities, including working. She states that by June and July of 1993 she was becoming unable to handle the cognitive duties of her job on a full time basis.

In May of 1993, ATC's Vice President and Controller, David Riggan asked Fisher to propose a restructuring of the Travel Expense section due to increased market competition and the prior efficiency problems. Fisher responded with a memorandum on May 10 in which, among other things, she recommended the elimination of the accountant position held by Mannell.[2] Riggan agreed with Fisher's recommendation to eliminate the accountant position and terminate Mannell's employment. Fisher's other recommended changes were also implemented.

Plaintiff alleges that she underwent a series of tests on July 9, 1993 and received troubling results. She also claims that on July 22, her doctor told her she should stop working. On July 23, 1993, Mannell was informed that her employment was being terminated, effective July 31, 1993.

In November of 1993, Mannell applied for disability benefits from the United States Department of Health and Human Services ("HHS"). In support of that application, she claimed that she had become completely disabled, and had been unable to perform her regular job functions as an accountant when she was terminated. HHS granted Mannell's claim, although for psychiatric disorders rather than CFIDS. At her deposition, Mannell testified that she had become totally and permanently disabled several months before her termination.

Plaintiff alleges that Fisher made conditions at work unpleasant and intolerable by acting hostile towards her, by being intentionally rude, excluding her from meetings, and taking work away from her.

It is undisputed that Mannell did not request disability benefits from ATC until the onset of the lawsuit. Plaintiff claims that she is now in the process of submitting such applications.

Plaintiff filed a timely charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC") in August, 1993. She received a right to sue notice from the EEOC and filed this suit within 90 days after receipt of the notice.

### Discussion

■ Under Federal Rule of Civil Procedure 56(c), the moving party is entitled to summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). The burden is on the moving party, and "the facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to ... the party opposing the motion." *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985). The non-moving party, however, may not rest on mere allegations or denials contained in the pleadings, but must come forth with specific facts with affidavits, depositions, interrogatories or other evidence to show a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Allstate Financial Corp. v. Financorp, Inc.*, 934 F.2d 55, 58 (4th Cir.1991). Summary judgment is proper "if the evidence is such that a reasonable jury

---

**2.** Defendant provided an excerpt from Fisher's memorandum in which she recounted a plan to move a large portion of the accounting done by the Travel Expense section to the General Accounting section, thus obviating the need for an accountant in the Travel Expense section. The memorandum further recommended Mannell's removal, claiming she had a poor understanding of her work, she took longer than others to complete assignments, and she had a history of being a poor team player. Defendant produced past evaluations of Mannell's work to document the claim that she had a history of a negative attitude.

could [not] return a verdict for the non-moving party." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2510.

As an initial matter, the Court notes that plaintiff has agreed to the dismissal of her breach of contract claim. In her remaining claims she argues: (1) that ATC discharged her because of her disability and failed to accommodate her disability in violation of the ADA, (2) that ATC harassed Mannell by subjecting her to adverse terms and conditions of employment because of her disability in violation of the ADA, (3) that ATC discharged Mannell wrongfully in violation of the public policy of Virginia, and (4) that ATC discriminated against and discharged Mannell for the purpose of interfering with her attainment of rights under ATC's short and long term disability plans in violation of ERISA.

## A. *Claim of Discharge in Violation of the ADA*

Defendant submits that the ADA prohibits discrimination against "a qualified individual with a disability because of the disability of such an individual." 42 U.S.C. § 12112(a). Defendant further submits that the ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The Fourth Circuit has further defined this term, stating that "[t]he Supreme Court has interpreted this provision to mean that a 'qualified' person must be 'able to meet all of a program's requirements in spite of his handicap.'" *Tyndall v. Nat'l Education Ctrs, Inc. of California*, 31 F.3d 209, 210 (4th Cir.1994) (quoting *Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979)).

Defendant argues that plaintiff has herself admitted in her deposition and in her application for HHS benefits that she was totally disabled at the time of her discharge and could not perform any of the essential functions of her job as an accountant. Thus, claims defendant, the undisputed evidence clearly shows that Mannell was not a "qualified individual" and cannot make a claim under the ADA.

Plaintiff agrees that she was unable to perform her duties as an accountant at the time of her termination. She argues, however, that ATC's disability policy offers short and long term disability leave and that the disability leave qualifies as the "employment position" which plaintiff must be able to perform under the ADA. Mannell submits that since she was qualified for the 'accountant-on-leave' position, she meets the threshold requirements of the ADA and is protected by the statute.

Plaintiff also contends that because she is protected by the ADA, and because ATC provides short and long term disability benefits, the provision of such benefits was a required accommodation to Mannell.[3] Plaintiff concludes that ATC violated her rights under the ADA by firing her instead of making the reasonable accommodation of placing her on leave.[4] Plaintiff cites *Eisfelder v. Michigan Dep't of Natural Resources*, 3 AD Cases (BNA) 933, 937 (W.D.Mich. November 16, 1993), for the proposition that providing of leave for an employee unable to work is a reasonable accommodation required for an employee unable to work.

Defendant disputes plaintiff's contention that she is protected by the ADA because she was qualified for the 'accountant-on-leave' position. Defendant argues that the ADA protects only employees qualified to perform the job previously held, that is, Mannell's accountant position in this case. Defendant also argues that the Court need only question whether an employer did not make a reasonable accommodation once it has determined that the employee is qualified to perform the essential functions of her job. Since it is undisputed that plaintiff is not able

---

3. Prohibited discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A).

4. It appears that plaintiff is making two claims under the ADA in this portion of her argument: (1) a discriminatory discharge claim and (2) a discriminatory failure to accommodate claim.

to perform the essential functions of the accountant's position, defendant urges that the Court need not address whether ATC's discharge of Mannell and failure to place Mannell on leave violate the ADA.

Moreover, defendant urges that even if plaintiff is covered by the ADA, ATC did not violate the statute. Defendant contends that Mannell cannot claim discriminatory discharge in the face of defendant's well documented legitimate business reasons for her termination. Defendant points to the restructuring of the Travel Expense section and plaintiff's past negative evaluations.

Defendant also contends that plaintiff cannot claim ATC discriminated against her by failing to accommodate her disability by putting her on leave. Defendant maintains that the ADA does not require employers to eliminate essential job function as a reasonable accommodation, citing *Jasany v. U.S. Postal Serv.*, 755 F.2d 1244 (6th Cir.1985). In addition, defendant argues that the ADA prohibits only an employer's failure to make accommodations to *"known"* disabilities. 42 U.S.C. § 12112(b)(5)(A) (emphasis added). Defendant also cites the *Technical Assistance Manual on Title I of the Americans with Disabilities Act*, Equal Employment Opportunity Commission, January 1992 at p. III–7, which states:

> In general, it is the responsibility of the applicant or employee with a disability to inform the employer that an accommodation is needed to participate in the application process, to perform essential job functions or to receive equal benefits and privileges of employment. An employer is not required to provide an accommodation if unaware of the need.

Defendant submits that it is undisputed that plaintiff never told anyone about her total disability, asked to be placed on leave, or asked for disability benefits. Defendant points to plaintiff's deposition testimony which includes Mannell's statement that she "didn't want anybody to know" about her total disability. Defendant also points out that the doctor's note Mannell brought to work after her three week leave allowed her to return to work without restrictions.

■ The Court concludes that there is no dispute that plaintiff was no longer qualified for the position of accountant. Moreover the Court is of the opinion that the accountant position is the relevant "employment position" to consider in determining whether an employee is protected by the ADA.

The Fourth Circuit has clearly stated that "[i]n order to establish a violation of [the relevant section] of the ADA, three criteria must be met: first, [plaintiff] must have a 'disability'; second, [plaintiff] must be 'qualified' for the job; and, third [the employer's] termination of [plaintiff] must constitute an unlawful 'discrimination' based on her disability." *Tyndall,* 31 F.3d at 212. In discussing who is 'qualified' under the Act, the court inquired into "(1) whether [the employee] could perform the 'essential functions of the job, i.e. functions that bear more than a marginal relationship to the job at issue,' and (2) if not, whether 'any reasonable accommodation by the employer' would enable [her] to perform those functions." *Id.* (quoting *Chandler v. City of Dallas,* 2 F.3d 1385, 1393–94 (5th Cir.1993)).

■ The language of *Tyndall* suggests that in deciding whether plaintiff was qualified, the Court should look at the "job at issue" and not some other position. The Court should then consider whether reasonable accommodations would have enabled plaintiff to perform her *existing* job as an accountant. Plaintiff's argument that the Court should ask whether she was qualified for the position of 'accountant-on-leave' is not persuasive. Mannell was no longer qualified for the accountant position, and she admitted in her deposition that there was nothing ATC could have done that would have allowed her to perform her job as an accountant. Therefore, as a matter of law, she does not qualify for protection under the ADA, and both her wrongful termination and her failure to accommodate claims must fail.

Because the Court concludes that Mannell was not a qualified individual under the ADA, the Court does not reach the question of whether her termination or the alleged failure of ATC to reasonably accommodate her by placing her on disability leave violate the ADA.

860

### B. Claim of Harassment in Violation of the ADA

Defendant contends that because plaintiff was not "qualified" under the ADA, she cannot make a claim for harassment in violation of the ADA. Defendant also contends that even if plaintiff were protected by the ADA, she could not make such a claim.

■ To state a claim of unlawful harassment, the plaintiff must prove that the harassment creates an objectively hostile or abusive work environment and that the putative victim subjectively perceives the environment to be abusive. *Harris v. Forklift Systems, Inc.,* — U.S. ——, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Defendant argues that under the objective component of the test, it is necessary to analyze "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance...." *Id.* at ——, 114 S.Ct. at 371. According to defendant, plaintiff alleges Fisher harassed her in three ways: (1) by suggesting she might want to consider a less stressful job; (2) by failing to include Mannell in certain meetings in the Travel Expense section; and (3) by avoiding Mannell. Defendant argues that not only do these actions not rise to the level of the *Forklift* standard, but also, according to Mannell's own deposition testimony, Fisher treated other employees in the same manner.

Plaintiff agrees that the *Forklift* standard is the appropriate standard, but counters that the behavior of Fisher and ATC meets that standard. In her response to defendant's motion for summary judgment, plaintiff states:

In her deposition, answers to interrogatories, and affidavit ... Mannell describes the manner in which she was subjected to a work environment that affected her work performance and work environment. Mannell submits that ATC's conduct, specifically Fisher's conduct, permits a reasonable juror to find that Mannell was subjected to an abusive work environment because of her disability.

Plaintiff's Response at 10. In her affidavit, Mannell complains that upon her return from medical leave, Fisher suggested she consider another department, another career, or another company. She further states: "[Fisher] then tried to make my working conditions unpleasant and intolerable by acting hostile towards me, by being intentionally rude, excluding me from meetings, and taking work away from me. This conduct adversely affected my ability to do my job and my health." Mannell Aff. ¶¶ 4, 5. These allegations comprise the claims of harassment Mannell makes against ATC.

■ The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). In order to invoke the protections of the ADA against harassment because of disability, the employee must be a "qualified individual" as defined in the ADA. As discussed above, the Court has concluded that the undisputed evidence shows plaintiff is not a "qualified individual" within the meaning of the Act. Plaintiff may not invoke the protections of the ADA against ATC for this claim any more than she may for the wrongful discharge claim.[5]

---

5. The Court notes that even if plaintiff is protected by the ADA, she must show that the conduct of Fisher rises to the level of discriminatory harassment under *Forklift Systems.* This necessarily includes both a determination that Fisher created an objectively hostile or abusive work environment, and that Fisher did so in a discriminatory manner because of Mannell's disability. *See* 42 U.S.C. § 12112(a). According to Mannell's own deposition testimony and Fisher's affidavit, much of the treatment Mannell claims was harassment was also given to other employees who did not suffer from any disability. All of the evidence clearly establishes that Fisher asked all of the employees to work overtime. Fisher never excluded Mannell from any department-wide meetings, and the meetings from which she allegedly excluded Mannell were two or three person meetings from which others besides Mannell were also excluded. Mannell also testified that Fisher may not have been avoiding her in the halls and that the behavior she took to be avoidance was exhibited towards others who did not have any disabilities. Because much of the behavior Mannell calls harassment was directed at others without disabilities, it cannot be considered discriminatory. This leaves only the conclusory statements by plaintiff that Fisher acted hostile towards her and the allegation that Fisher took work away from her. Plaintiff has offered no evidence to indicate that Fisher took work away from her because of her disability, and she

Accordingly, the Court concludes that plaintiff cannot make out a claim for discriminatory harassment in violation of the ADA.

### C. Wrongful Discharge Claim

Plaintiff claims that ATC discharged Mannell in violation of the public policy of Virginia. Defendant argues that this claim fails to state a cause of action because the Virginians with Disabilities Act ("VDA"), Va.Code § 51.5–1, sets forth Virginia's policy on the prohibition of discrimination against otherwise qualified individuals. Defendant contends that the relief provided by this statute is the exclusive remedy because the VDA states: "The relief available for violations of this chapter shall be limited to the relief set forth in this section." Va.Code § 51.5–46. Defendant urges that any state law claim for wrongful discharge because of disability must be brought under the VDA, and plaintiff has not and cannot allege that she has complied with the VDA's administrative prerequisites.

One such prerequisite is that an action "shall be forever barred unless such claimant or his agent, attorney or representative has commenced such action or has filed by registered mail a written statement of the nature of the claim with the potential defendant or defendants within 180 days of the occurrence of the alleged violation." Va.Code § 51.5–46. Because plaintiff did not provide any notice to ATC within 180 days, defendant contends that plaintiff should not be allowed to bring a common law claim of discriminatory discharge and circumvent the administrative requirement of Virginia's exclusive remedy for disability discrimination.

Defendant further argues that even were plaintiff to attempt to bring a claim under the VDA, plaintiff would not meet the definition of "otherwise qualified" under the VDA for the same reasons her ADA claim fails. The VDA provides that "nothing in this section shall prohibit an employer from discharging ... an employee who, because of his disability, is unable to adequately perform his duties." Va.Code § 51.5–41. Defendant maintains that plaintiff has admitted her inability to perform her duties, and, thus, her discharge was not in violation of Virginia's public policy as stated in the VDA.

Plaintiff counters that she had no obligation to exhaust her remedies under the VDA because the VDA does not apply to ATC and consequently Mannell has no remedies under the VDA.[6] Plaintiff also argues that the VDA is not the exclusive state remedy, relying on *Lockhart v. Commonwealth Education Sys. Corp.*, 247 Va. 98, 439 S.E.2d 328 (1994), in which, according to plaintiff, the Virginia Supreme Court made clear that the presence of statutory remedies generally does not preempt the common law remedy available for wrongful discharge in violation of Virginia public policy.

"Virginia strongly adheres to the employment-at-will doctrine." *Lockhart v. Commonwealth Education Systems Corp.*, 247 Va. 98, 439 S.E.2d 328, 330 (1994). The Supreme Court of Virginia has, however, adopted a narrow exception to the doctrine which allows a state common law wrongful discharge action for discharge in violation of the strong public policy of Virginia, for example, discharge because of race or gender. *Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985). Plaintiff argues, based on *Bowman*, that she has a state common law claim against ATC. However, the VDA provides for a state private cause of action for discrimination on the basis of a

---

does not specify when and in what manner Fisher took work away from her. In her motion, plaintiff specifies no specific incidents of harassment and merely asserts that all the evidence describes how Mannell was subjected to a bad work environment. The standard for summary judgment clearly requires that Mannell come forward with specific facts, and she has not done so except with respect to a few specific situations which, according to the undisputed evidence that other employees received the same treatment, do not rise to the level of discriminatory harassment.

**6.** Plaintiff claims that the VDA does not apply to ATC because ATC is subject to the Rehabilitation Act of 1973, 42 U.S.C. §§ 794, 794a. The Rehabilitation Act provides for administrative remedies for disability discrimination against employers who receive government assistance. *Id.* The VDA states that it "shall not apply to employers covered by the federal Rehabilitation Act of 1973." Va.Code Ann. § 51.5–41(F).

disability. Va.Code Ann. § 51.5–41. This is the statement of Virginia's public policy against disability discrimination. Importantly, the VDA clearly states that "[t]he relief available for violations of this chapter shall be limited to the relief set forth in this section." Va.Code Ann. § 51.5–46. Thus, the General Assembly has indicated that the VDA is the exclusive state remedy for employment discrimination based on disability. There are no cases to the contrary. The case plaintiff relies on, *Lockhart*, does not support a contradictory position. In *Lockhart*, the Virginia Supreme Court rejected the defendant's argument that the plaintiff could not maintain a state common law wrongful discharge action because she had adequate remedies under *federal* law. *Lockhart*, 439 S.E.2d at 332. There was no state statutory protection, and the court held that the plaintiff was not required to exhaust her federal remedies because her wrongful discharge claim was governed solely by state law, not federal law. *Id.*

▉ In this case, there is a *state* statute which by its own terms provides the exclusive remedy for the type of discrimination at issue here. In the face of the plain statutory language, *Lockhart* cannot support plaintiff's argument. The Court concludes that Mannell is required to pursue any state law claim of disability discrimination under the VDA.

Plaintiff's claim that because the VDA does not apply to ATC and does not provide her with a remedy she should be able to bring a state common law wrongful discharge claim is also without merit. First, plaintiff fails to advance anything to support her contention that ATC falls under the Rehabilitation Act. Second, the VDA's explicit statement that it does not apply to employers covered by the Rehabilitation Act indicates that the General Assembly did not intend employees who could proceed against their employers under the Rehabilitation Act to be able to proceed under the VDA, which is the exclusive state law remedy. Thus, if ATC is covered by the Rehabilitation Act, plaintiff's claim should

have been brought under the Rehabilitation Act, and she cannot maintain a state common law wrongful discharge claim against ATC.[7]

Accordingly, the Court is of the opinion that plaintiff's state law claim for wrongful discharge fails as a matter of law.

### D. *Claim of Violation of ERISA*

Plaintiff claims that ATC discriminated against and discharged her for the purpose of interfering with her attainment of rights under the ATC's short and long term disability plans in violation of ERISA.

Defendant acknowledges that "Section 510 of ERISA [29 U.S.C. § 1140] prohibits employer conduct taken against an employee who participates in a pension benefit plan for 'the purpose of interfering with the obtainment of any right to which such participant may become entitled under the plan.'" *Gavalik v. Continental Can Co.*, 812 F.2d 834, 851 (3d Cir.), *cert. denied*, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987). Defendant submits that a section 510 claim is to be analyzed using the Title VII and ADEA framework. *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 347 (3d Cir.1990). Defendant further submits that to establish a claim under section 510, plaintiff must make a prima facie case by proving that she "(1) belongs to the protected class, (2) was qualified for the position involved, and (3) was discharged or denied employment under circumstances that provide some basis for believing that the prohibited intent was present." *Id.*

It is defendant's position that plaintiff cannot meet her initial prima facie burden because she was not qualified to remain in her position with ATC and was thus not discharged under circumstances that provide some basis for believing that the prohibited intent was present. Defendant supports this position with Mannell's own deposition testimony in which she admits that she did not tell any of her supervisors that she was

---

7. Plaintiff has not brought a claim under the Rehabilitation Act and has not alleged that she has attempted to exhaust any of the administrative remedies available to her under the Rehabilitation Act. Moreover, the ADA was fashioned after the Rehabilitation Act which does not protect employees who are not qualified to perform the essential functions of their jobs with or without reasonable accommodations.

disabled and did not inform anyone about alleged plans to seek disability benefits. Therefore, defendant concludes, ATC could not have intended to interfere with her right to seek disability benefits.

Defendant also argues that this claim must fail because Mannell never tried to obtain benefits and never asked about filing for disability either before or after she was terminated.

Plaintiff responds that a formal application for benefits on her part is not a prerequisite to a section 510 ERISA claim. She states that her rights to disability benefits had vested and claims that an inference of ATC's intentional interference with those rights is supported by the fact that she was fired the day after she found out about her total disability.

Plaintiff again counters defendant's argument that she was not qualified for the position of accountant with the assertion that she was qualified for the position of 'accountant-on-disability-leave.' Finally plaintiff agrees that she did not seek benefits after her discharge but explains that she has now filed for benefits and states that the instant action may appropriately be stayed pending resolution of Mannell's formal application for benefits.

■ As an initial matter, it is possible that this action or at least this claim should be stayed until ATC has ruled on plaintiff's application for benefits. The claim that ATC interfered with plaintiff's receipt of disability benefits does not become ripe unless and until ATC denies Mannell those benefits. However, even if ATC denies plaintiff's claim for disability benefits, she still cannot make out a claim under section 510 of ERISA. The Third, Seventh and Ninth Circuits have all held that "to recover under § 510 the employee must show that the employer made a conscious decision to interfere with the employee's benefits." *Turner,* 901 F.2d at 347; *Meredith v. Navistar Intern. Transp. Co.,* 935 F.2d 124 (7th Cir.1991); *Dytrt v. Mountain State Telephone and Telegraph Co.,* 921 F.2d 889, 896 (9th Cir.1990) ("no action lies where the alleged loss of rights is a mere consequence, as opposed to a motivating factor behind the termination"). Under the framework set up by the *Turner,* plaintiff has to show that she is qualified. The Court should conclude that this requires a showing that she was qualified to do the job of an accountant, the job from which she was discharged. As discussed above, the undisputed evidence establishes that plaintiff was not qualified. Moreover, the inference of interference that plaintiff points to is significantly undermined by the fact that she told no relevant person at ATC about her doctor's conclusions, and the fact that in her deposition she admitted she did not want anybody to know. The inference is also seriously undermined by the fact that Fisher recommended Mannell's termination in a memorandum dated over two months before Mannell learned of her total disability. In the memorandum, Fisher pointed to job evaluations, dating back to 1985, in which prior supervisors had found her to have a negative attitude difficulty with her work and difficulty getting along with her co-workers. Plaintiff on the other hand has offered no evidence to indicate that ATC "made a conscious decision to interfere with her ability to claim benefits." *Turner,* 901 F.2d at 347. The undisputed evidence shows that plaintiff was not qualified for her position as an accountant, that she did not tell anyone at ATC about her disability or any intention to make a claim for benefits, and that the decision to eliminate her job was made before she learned of her total disability, based on documented problems with her work unrelated to her disability.

Thus, plaintiff cannot make out a prima facie claim of violation of her rights under section 510 of ERISA and her ERISA claim must fail as a matter of law.

In conclusion, there are no disputed issues of material fact relating to any of plaintiff's claims. On the undisputed facts, all of plaintiff's claims must fail as a matter of law. Accordingly, the Court grants defendant's motion for summary judgment as to all claims.