Thomas MISTRETTA, Plaintiff,

v.

VOLUSIA COUNTY DEPARTMENT OF CORRECTIONS, Francis T. Moore, in his official capacity and individually, Marilyn C. Ford, in her official capacity and individually, Glenda L. Powell, in her official capacity and individually, Lowette Henderson, in her official capacity and individually, Lester Neel, in his official capacity and individually, and Ken Modzelewski, in his official capacity and individually, Defendants.

No. 97–1050CIV–ORL–18A.

United States District Court, M.D. Florida, Orlando Division.

Feb. 1, 1999.

Charles V. Choyce of the Law Firm of Bogin Munns & Munns, Orlando, FL, for plaintiff.

David V. Kornreich and Benton N. Wood, of the Law Firm of Muller, Mintz, Kornreich, Caldwell, Casey, Crosland & Bramnick, P.A., Orlando, FL, for defendants.

## ORDER

G. KENDALL SHARP, District Judge.

Plaintiff Thomas Mistretta ("Mistretta") brings the instant action against defendants Volusia County Department of Corrections ("the County"), and Francis T. Moore ("Moore"), Marilyn C. Ford ("Ford"), Glenda L. Powell ("Powell"), Lowette Henderson ("Henderson"), Lester Neel ("Neel"), and Ken Modzelewski ("Modzelewski"), in their individual and official capacities, alleging violations of the Family Medical Leave Act of 1993, 29 U.S.C. §§ 2612, 2614 ("FMLA"); the Americans with Disabilities Act, 42 U.S.C. § 12112 ("ADA"); and the Rehabilitation Act of 1973, 29 U.S.C. §§ 706, 794 ("the Rehabilitation Act"). The plaintiff also alleges claims under Florida law for false imprisonment, assault, intentional infliction of emotional distress, and negligent infliction of emotional distress. The case is presently before the court on the defendants' motion for summary judgment, to which the plaintiff has responded in opposition, and the defendants' motion to strike. Following a review of the case file

and relevant law, the court concludes that the defendants' motion for summary judgment should be granted and their motion to strike should be denied.

## I. Factual Background

On January 16, 1984 Mistretta was hired by Volusia County as a Corrections Officer in the Department of Corrections. In 1986 he was promoted to Sergeant and in 1988 he was transferred to the Program Services Division to work as a Case Management Counselor. Mistretta was promoted to Case Management Coordinator in October of 1991.

Beginning in 1991, Mistretta received medical treatment for severe anxiety panic disorder. In order to control his panic disorder, Mistretta took medication on a daily basis. Without the medication, the plaintiff claims that he would not be able to perform his job as Case Management Counselor.

In a letter dated August 24, 1992, Mistretta requested that he be demoted from Case Management Coordinator to Case Management Counselor. He asked that he not receive a reduction in salary and his request was granted. During this same time, Mistretta also requested a three week medical leave of absence. Mistretta submitted a note from Dr. Bruce Rankin, who is Board Certified in Family Practice but is not a psychiatrist or psychologist. Although the note did not state that the plaintiff had a mental disability, Mistretta claims that his supervisors, Moore and Ford, were aware that he suffered from a panic disorder. Moore, the Public Protection Services Center Director, granted Mistretta's request for a three week leave of absence.

In September of 1993, the plaintiff requested another three week medical leave of absence. Mistretta again submitted a note from Dr. Rankin which stated that the plaintiff was suffering from chest pains. Plaintiff's request was granted. During 1993, the plaintiff missed eight and a half weeks of work due to sick leave, personal time, vacation time, and medical leave.

In 1994, the plaintiff requested and was granted four weeks of paid leave under the FMLA for the birth of his child. During 1994, the plaintiff missed twelve and a quarter weeks of work due to use of sick leave, personal time, vacation time, and FMLA leave.

In 1995, there occurred a series of incidents which led to the plaintiff's discharge. On June 2, 1995 the plaintiff received of "Letter of Caution" in response to a complaint that he had lost his temper while initiating a confrontation with an inmate. Mistretta attended a meeting with Henderson, the Senior Case Management Counselor, and Powell, the Case Management Coordinator, to discuss the incident. During the meeting, the plaintiff suffered a panic attack and asked to leave the room. The plaintiff contends that Powell initially refused to let him leave the room and when he was allowed to leave, Powell struck him, causing a back injury.

On June 22, 1995, the plaintiff received a "Letter of Reprimand" for violating proper procedures with respect to computing sentences for inmates. Plaintiff requested a meeting with Moore to discuss the "Letter of Reprimand" and "Letter of Caution." On July 19, 1995, Moore met with Mistretta and then-Assistant Director Daniel Cassidy, whom the plaintiff had selected as a witness for the meeting. During the meeting, the plaintiff suffered a panic attack. As a result of the plaintiff's actions and statements during the meeting, Moore referred him to a qualified professional to determine his fitness for duty. On September 27, 1995 the plaintiff was notified that he was being placed on a medical leave of absence until it was determined that he was psychologically fit to return to work.

The plaintiff met with Dr. Riaz Mazcuri who certified plaintiff as psychologically fit for duty without limitation or need for accommodation. This marked the first time that the plaintiff was ever treated by a psychologist. Upon receipt of verification from Dr. Mazcuri, Moore authorized

the plaintiff to return to work. The plaintiff was paid for all of the time that he missed while he was out on medical leave.

On approximately December 4, 1995, a number of County corrections officers complained that the plaintiff had been calling them at their homes. Each of the officers had unlisted numbers and they wanted to know how Mistretta had obtained their private phone numbers. Plaintiff was aware that pursuant to Florida statutes, it is a violation of state law to publish a correction officer's home phone number without permission. A meeting was held with Mistretta, Captain Bruce Bolton, and Modzelewski, a law enforcement officer assigned to the Department of Corrections, to discuss the complaints. Plaintiff refused to provide any information as to how he obtained the corrections officers' phone numbers and stated that he wished to invoke his Fifth Amendment privilege against self-incrimination. Plaintiff was informed that he would be charged with insubordination unless he provided the information, but he refused.

On December 8, 1995, at a meeting with Moore, Neel, Modzelewski, and Captain Bolton. Mistretta received a "Notice of Intent to Terminate." Mistretta was advised that his employment would be terminated unless he answered the question as to how he got the telephone numbers. After Mistretta refused to answer, Neel stepped forward to take his identification badge. Plaintiff responded by drawing back into a karate stance, at which point Moore gave instructions to have the plaintiff escorted out of the jail.

Three days later, the plaintiff's employment was terminated for failure to provide the names of all individuals who gave him the phone numbers and for insubordination in the December 8th meeting with Moore. Plaintiff alleges that he did provide, through his attorney, an explanation as to how he obtained the numbers and he was not insubordinate in the meeting with Moore. Plaintiff appealed his termination to the Volusia County Personnel Board and a hearing was held on January 30, 1996. The Personnel Board unanimously upheld the finding of insubordination and the decision to terminate the plaintiff's employment. The plaintiff exhausted all of his administrative remedies and this present suit followed.

## II. Legal Discussion

### A. Summary Judgment Standards

Summary judgment is authorized if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. 2505.

The moving party bears the burden of proving that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied the burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party may rely solely on his pleadings to satisfy this burden. *See Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548; Fed.R.Civ.P. 56(c).

"[A]ll that is required [to proceed to trial] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505 (quoting *First Nat. Bank of Ariz. v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). Summary judgment is mandated, however, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

### B. Motion to Strike

On December 3, 1998, the defendants filed a motion to strike portions of the plaintiff's opposition to summary judgment. In their motion, the defendants argue that plaintiff's retaliation claim under the FMLA should not be considered by the court because it was not pled in the complaint. The court, however, finds that the plaintiff's complaint was sufficient to give notice to the defendants that retaliation under the FMLA was a possible legal theory. *See The City of Gainesville v. Florida Power & Light Co.,* 488 F.Supp. 1258, 1263 (S.D.Fla.1980) ("As long as the pleadings 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests,' the theory of notice pleading has been satisfied.") (citation omitted). Thus, the retaliation claim will not be stricken.

The defendants also argue that portions of plaintiff's opposition to summary judgment mischaracterize plaintiff's deposition testimony. The court, however, can make its own determination as to whether there is a genuine issue for trial after evaluating all the evidence in the record. Therefore, the defendants' motion to strike will be denied. ,

### C. The Merits of Defendants' Motion for Summary Judgment

In his complaint, the plaintiff alleges that he was retaliated against for exercis-

ing his rights under the FMLA (Count I); he was subjected to unlawful discrimination in violation of the ADA (Count II); he was discriminated against in violation of the Rehabilitation Act (Count III); and he was subjected to false imprisonment (Count IV), assault (Count V), intentional infliction of emotional distress (Count VI), and negligent infliction of emotional distress (Count VII). The court will address each claim in its respective order.

### 1) Count I—FMLA Claim

Plaintiff alleges that he was retaliated against for exercising his rights under the FMLA. Specifically, the plaintiff claims that Ford verbally reprimanded him and threatened him with termination for taking FMLA leave in connection with the birth of his child.

■ In order to establish a prima facie case of retaliation under the FMLA, the plaintiff must show that: (1) he availed himself of a protected right under the FMLA; (2) he was subjected to an adverse employment action; and (3) a causal link exists between (1) and (2). *See Fleming v. Boeing Co.,* 120 F.3d 242, 248 (11th Cir. 1997); *Cross v. Southwest Recreational Industries, Inc.,* 17 F.Supp.2d 1362, 1371 (N.D.Ga.1998).

■ Plaintiff's retaliation claim fails because he cannot satisfy the second prong of the prima facie case. Verbal reprimands and threats of termination do not constitute adverse employment actions. *See Benningfield v. City of Houston,* 157 F.3d 369, 377 (5th Cir.1998) (holding that verbal reprimands do not constitute adverse employment actions); *Nunez v. City of Los Angeles,* 147 F.3d 867, 875 (9th Cir.1998) ("Mere threats and harsh words are insufficient" to constitute an adverse employment action.); *Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 708 (5th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 336, 139 L.Ed.2d 260 (1997) (holding that threats of discharge are not adverse employment actions); *Smiley v. Jekyll Island*

*State Park Authority,* 12 F.Supp.2d 1377, 1382 (S.D.Ga.1998) (finding that plaintiff's allegations that his supervisor slapped him, verbally abused him and criticized his job performance do not establish adverse employment action). While the Eleventh Circuit has held that formal reprimands can constitute adverse employment actions, the plaintiff has not shown that Ford's reprimands were anything more than mere criticisms. *See McCabe v. Sharrett,* 12 F.3d 1558, 1563 (11th Cir. 1994).

■ Plaintiff also suggests that he was terminated in retaliation for exercising his rights under the FMLA. While termination does satisfy the second prong of the test, the plaintiff has not offered any evidence of a causal link between his FMLA leave and his termination. The plaintiff took his FMLA leave over a year before he was discharged, thus the plaintiff cannot rely on temporal proximity to establish an inference of causation. Because the plaintiff cannot establish a prima facie case of retaliation, summary judgment in favor of the defendants will be granted as to Count I.

*2) Count II—ADA Claim*

*a. Failure to Accommodate*

The plaintiff claims that the defendants discriminated against him because of his disability in violation of the ADA. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines "disability" as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such impairment; or

(C) being regarded as having such an impairment.

*Id.* at § 12102(2).

■ To establish a prima facie case under the ADA, the plaintiff must show that (1) he has a disability; (2) he is a qualified individual; and (3) he was discriminated against because of his disability. *See Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1132 (11th Cir.1996); *see also* 42 U.S.C. § 12132. Mistretta contends that he meets the ADA's definition of disability in two ways. First, he claims that his panic disorder, when not treated with medication, substantially limits one or more of his major life activities. Second, even if his panic disorder does not qualify as a disability, he argues that he satisfies the first prong of the prima facie case because the defendants regarded him as having such an impairment, as provided by § 12102(2)(C).

In order to show that he is disabled for purposes of the ADA, the plaintiff argues that his anxiety disorder, when left untreated by medication, substantially limits his major life activities of working, caring for himself, and communicating with others. In *Harris v. H & W Contracting Co.,* 102 F.3d 516 (11th Cir.1996), the Eleventh Circuit held that "[t]he determination of whether an individual is substantially limited in a major life activity must be made on a case by case basis, without regard to mitigating measures such as medicines, or assistive or prosthetic devices." *Id.* at 520 (quoting 29 C.F.R. app. § 1630.2(j) (1996)). Other federal circuit courts agree that ameliorative measures should not be considered when determining whether an impairment substantially limits major life activities. *See Doane v. City of Omaha,* 115 F.3d 624, 627–28 (8th Cir.), *cert. denied,* 520 U.S. 1162, 118 S.Ct. 693, 139 L.Ed.2d 638 (1998); *Arnold v. United Parcel Service, Inc.,* 136 F.3d 854, 866 (1st Cir.1998); *Holihan v. Lucky Stores, Inc.,* 87 F.3d 362, 366 (9th Cir.), *cert. denied,* 520 U.S. 1162, 117 S.Ct. 1349, 137 L.Ed.2d 506 (1997); *Matczak v. Frankford Candy & Chocolate*

*Co.*, 136 F.3d 933, 937 (3d Cir.1997); *Roth v. Lutheran General Hospital,* 57 F.3d 1446, 1454 (7th Cir.1995). Therefore, the court must determine whether the plaintiff's panic disorder, when not treated with medication, substantially limits his major life activities.

The defendants argue that the plaintiff's panic disorder does not substantially limit any of his major life activities, including his ability to work. However, the defendants do not address the effects of his disorder when left untreated by medication. In his deposition, the plaintiff testified that without his medication he would not be able to work. (Doc. 36, Ex. B, Mistretta Depo. at 138–39). Furthermore, Dr. Riaz Rahman, a psychiatrist who treated the plaintiff after he was terminated by the defendant, stated in his affidavit that the plaintiff's panic disorder, when left untreated by medication, would render the plaintiff incapable of performing most jobs, interacting and communicating with others, caring for himself, and controlling his emotions. (Doc. 36, Ex. I, Rahman Aff. at 2). Dr. Brent Schlapper, who treated plaintiff during his employment with the County, stated in his deposition that the plaintiff told him that without his daily dose of Xanax and Paxil he would not be able to function. (Doc. 27, Ex. 5, Schlapper Depo. at 13). Therefore, there is a question of fact as to whether the plaintiff's panic disorder, when not controlled by medication, substantially limits his major life activities.[1] *See e.g., Pritchard,* 92 F.3d at 1133 (finding that plaintiff's depression could limit major life activities when not controlled by medication.).

The second prong of the prima facie case is whether the plaintiff is "otherwise qualified" for the position in question. The defendants do not contest that the plaintiff is a qualified individual and therefore, the court will assume that the plaintiff satisfies this prong.

■ Finally, in order to make out a prima facie case, the plaintiff must show that he was discriminated against because of his disability. The plaintiff argues that the defendants' failure to provide him with reasonable accommodation for his disability is discrimination in violation of the ADA. Specifically, the plaintiff states that: (1) he requested fewer reassignments; (2) he asked for assistance in receiving psychiatric counseling; and (3) he requested a transfer to another Volusia County agency. The plaintiff argues that the defendants' denial of these requests for accommodation constitutes disability discrimination. The plaintiff's argument fails, however, because he cannot show that the defendants were aware that he had limitations resulting from his alleged disability which needed reasonable accommodation. *See Morisky v. Broward County,* 80 F.3d 445 (11th Cir.1996) (holding that the plaintiff must show that the employer had notice of her disability in order to make out a prima facie case); *Taylor v. Principal Financial Group, Inc.,* 93 F.3d 155, 164 (5th Cir. 1996) (holding that in order to prove discrimination, plaintiff must show that the employer knew of his substantial physical or mental limitation).

The interpretative appendix to the regulations under the ADA state that:

Employers are obligated to make reasonable accommodation only to physical or mental limitations resulting from the disability of a qualified individual with a disability that is known to the employer. Thus, an employer would not be expected to accommodate disabilities of which it is unaware.... [I]t is the responsibility of the individual with a disability to inform the employer that an accommodation is needed. When the need for an accommodation is not obvious, an employer, before providing a reasonable accommodation, may require that the individual with a disability provide documentation of the need for accommodation.

---

1. Because there is a question of fact as to whether the plaintiff is disabled, the court will

not consider his second argument as to the defendants' perception of him as disabled.

29 C.F.R. Pt. 1630, App. Therefore, in order to survive summary judgment, the plaintiff must adduce evidence which would show that the defendants were aware that he had physical or mental limitations arising out of his alleged disability. *See Taylor*, 93 F.3d at 164 ("[T]he ADA does not require an employer to assume that an employee with a disability suffers from a limitation."). In the instant case, Mistretta has not shown that the defendants were aware that he had any limitations as a result of his panic disorder. In his deposition, the plaintiff testified that he never told his supervisors he was incapable of performing the essential functions of his job. (Doc. 36, Ex. B, Mistretta Depo. at 138). Furthermore, the evidence shows that all of the medical personnel who treated the plaintiff when he was employed by the defendant County concluded that his panic disorder did not substantially limit his major life activities. None of the doctors indicated that Mistretta had any mental limitation which needed accommodation. *See id.* at 167 ("When dealing in the amorphous world of mental disability, we conclude that health-care providers are best positioned to diagnose an employee's disabilities, limitations, and possible accommodations."). While the defendants may have been aware that the plaintiff suffered from emotional problems and stress, there is no evidence that they knew that the plaintiff had limitations from a recognized mental disorder which needed treatment and reasonable accommodation in order for him to perform on a daily basis. *See e.g. Miller v. National Casualty Co.*, 61 F.3d 627, 629–30 (8th Cir.1995) (finding that the employer was not aware of the plaintiff's disability even when the plaintiff had told her employer that she couldn't handle the stress of her job; a nurse practitioner told the employer that the plaintiff had "situational stress reaction," and the plaintiff's sister told the employer on two different occasions that the plaintiff was "mentally falling apart.")

In support of his argument that he requested accommodation for his disability, the plaintiff cites to excerpts from his deposition testimony. However, those excerpts do not show that the plaintiff requested accommodation because of his limitations from his panic disorder. The plaintiff testified that he was tired of changing jobs, but he never stated that he requested fewer reassignments because of his disability. (Doc. 36, Ex. B, Mistretta Depo. at 240). The evidence shows that none of plaintiff's requests constituted a formal request for accommodation under the ADA. In fact, the testimony that the plaintiff cites to indicates that he did not have a conversation with Ford requesting he not be reassigned,[2] he was happy with the assignment he was given,[3] and he received an assignment that resulted in a reduction in workload.[4] Plaintiff also states that he asked the defendants to pay for him to get psychiatric treatment from Dr. Mazcuri. However, the plaintiff has not shown that it would have been a reasonable accommodation for the defendants to pay the full cost of psychiatric counseling from a doctor who had certified the plaintiff as psychologically fit for duty. Furthermore, in contrast to his arguments that he requested accommodation, Mistretta admitted in his deposition that he did not ask for special accommodations because he did not know he had a constitutional right to them. (Doc. 27, Ex. 1. Mistretta Depo. at 381). Summary judg-

---

2. Q: Did you have any conversation with Marilyn Ford about your first choice to be left alone and stay in the west wing of the corrections facility?
A: I don't recall having a conversation with her about that, no. (Doc. 36, Ex. B. Mistretta Depo. at 250)

3. Q: You don't object to the fact that in July of 1983, that your—

A: That they left me exactly where I was?
Q: Yeah.
A: No, not at all.
*Id.* at 239.

4. Q: So this was a reduction in your workload.
A: Absolutely.
*Id.* at 260.

ment, therefore, is appropriate on the basis of Mistretta's failure to request reasonable accommodation for the limitations from his mental disability.

### b. Hostile Work Environment

 Plaintiff contends that he was subjected to disability-based harassment by his supervisors and co-workers sufficient to create a hostile work environment in violation of the ADA. ADA hostile environment claims are analyzed under the Title VII standards for sexual harassment claims. *See Rio v. Runyon,* 972 F.Supp. 1446, 1459 (S.D.Fla.1997). In order to establish a hostile environment claim, the plaintiff must show that: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment was severe and pervasive enough to affect a term, condition, or privilege of employment; and (5) the actions of the supervisors and co-workers can be imputed to the defendant County. *See id.* (citing *Henson v. City of Dundee,* 682 F.2d 897, 903–05 (11th Cir.1982)).

The plaintiff claims that he was given "punishment" workloads, his supervisors instructed his co-workers not to associate with him, he was kept in a locked room while having an anxiety attack, he was suspended without pay and ordered to submit to a Fitness for Duty Examination, and he was verbally abused by his supervisors and co-workers. The standard for determining whether conduct is sufficiently severe and pervasive is whether it was physically threatening or humiliating and whether it unreasonably interferes with a person's job performance. *See Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *see also* 29 C.F.R. § 1609.1(b)(1)(ii) and (iii). If the plaintiff can show that the discriminatory conduct was severe and pervasive he must still show that the harassment was because of his disability. *See Haysman v. Food Lion, Inc.,* 893 F.Supp. 1092, 1108 (S.D.Ga. 1995) ("No matter how severe the abuse, [the employer] is only liable under the ADA if the harassment was because of [the employee's] disability.").

 The court finds that Mistretta has not created a question of fact as to whether he was subjected to severe and pervasive disability-based harassment. Although Mistretta complained about being assigned to "punishment" workstations and "punishment" workloads, so did his non-disabled co-workers. (Doc. 27, Def's Facts at ¶¶ 14–18). The evidence shows that the majority of the other Counselors complained about excessive workloads, frequent reassignments, and undesirable workstations. Similarly, other Counselors were given instructions not to discuss non-work related matters with co-workers on County time. Because much of the treatment that Mistretta claims was harassment was experienced by his non-disabled coworkers, it cannot be considered discriminatory. Moreover, the plaintiff has offered no evidence showing a causal relationship between these allegations of harassment and his disability.

Plaintiff also alleges that Henderson and Powell kept him "in a locked room while he was having an anxiety attack and refused to let him leave despite his pleas to do so." (Doc. 36 Pl's Opp. at 12–13). However, the plaintiff has offered no evidence to show that he was kept in Henderson's office because of his disability. The meeting was held to discuss the plaintiff's unprofessional behavior with an inmate. The court does not find it to be abusive or hostile for such a meeting to occur behind closed doors. Furthermore, the plaintiff did not testify that the door was locked and he stated that he was allowed to leave after he refused to sit down and discuss the complaint. (Doc. 36, Ex. B, Mistretta Depo. at 403, 416, 428).

Similarly, it was not abusive for Moore to order the plaintiff to submit to a Fitness for Duty Examination. Moore's request was prompted by the plaintiff's actions during a meeting in July of 1995. Plaintiff admits that during the meeting he suffered from an anxiety attack. Therefore, Moore

had good cause for requesting the examination. Once the plaintiff was certified as psychologically fit for duty, he returned to work and was paid for all the time that he missed while he was out on leave.

This leaves only plaintiff's allegations that Ford and several correctional officers ridiculed him and mimicked his anxiety attacks. However, there was no evidence presented that anyone mimicked the plaintiff's anxiety attacks. Furthermore, much of Ford's criticism that plaintiff complains about was attributable to his work performance and violation of County procedures, not to his disability. As for the other employees' offensive comments, the court finds that although they may have been inappropriate, they were not sufficiently severe or pervasive to create the type of "hellish" environment that is prohibited by the ADA. *See Rio*, 972 F.Supp. at 1460 (stating that occasional adolescent, rude, or insensitive comments are not actionable); *Mannell v. American Tobacco Co.*, 871 F.Supp. 854, 861 n. 5 (E.D.Va.1994) (finding that conclusory statement that plaintiff's supervisor acted hostile towards her is insufficient to survive summary judgment). Therefore, summary judgment in favor of the defendants will be granted on Count II.[5]

### 3) Count III—Rehabilitation Act Claim

Plaintiff states in his opposition to summary judgment that he "does not intend to pursue [this] claim and the complaint can be amended accordingly." (Doc. 36, Pl's Opp. at 2 n. 1). Therefore, judgment as a matter of law will be granted in favor of the defendants on Count III.

### 4) Counts IV – VII—State Law Claims[6]

#### a. False Imprisonment

■ Plaintiff alleges that he was falsely imprisoned by defendants Powell and Henderson on June 2, 1995 and by defendant Moore on July 19, 1995. In order to establish a claim of false imprisonment, the plaintiff must show that (1) he was restrained against his will; and (2) "the detention was unreasonable and unwarranted under the circumstances." *Resley v. Ritz–Carlton Hotel Co.*, 989 F.Supp. 1442, 1449 (M.D.Fla.1997) (citing *Rivers v. Dillards Dep't Store, Inc.*, 698 So.2d 1328, 1331 (Fla. 1st DCA 1997)).

■ The plaintiff's claim fails because he cannot show that the detentions were unreasonable. Both of the plaintiff's allegations of false imprisonment occurred during meetings with his supervisors to discuss workplace problems involving the plaintiff. Although the doors were closed during the sessions, there is no evidence that they were locked. The court does not find it unreasonable to hold meetings regarding workplace disciplinary actions behind closed doors. Furthermore, the plaintiff requested the July 1995 meeting with Moore and had a witness present who he selected. Even though the plaintiff states that he repeatedly asked to leave the meetings, the evidence shows that he was only in the meetings for a brief period of time and he eventually left each session on his own accord. Therefore, because the plaintiff has not shown that it was unreasonable for his superiors to meet with him in private to discuss disciplinary actions, he cannot succeed on his claims for false imprisonment.

#### b. Negligent Infliction of Emotional Distress

■ The plaintiff also claims that he suffered emotional distress as a result of the defendants' negligence. In order to recover on a negligent infliction of emotional distress claim, Mistretta must show

---

5. Because there is no individual liability under the ADA, defendants Moore, Ford, Powell, Henderson, Neel, and Modzelewski are entitled to judgment as a matter of law on Count II. *See Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir.1996).

6. The plaintiff has decided not to pursue his claims for assault (Count V) and intentional infliction of emotional distress (Count VI), thus the court will grant summary judgment in favor of the defendants on those counts.

**1266**

that he suffered emotional distress caused by a physical impact which manifested itself into some physical injury resulting from another's negligence. *See Reynolds v. State Farm Mutual Automobile Ins. Co.*, 611 So.2d 1294, 1296 (Fla. 4th DCA 1992), *rev. denied,* 623 So.2d 494 (Fla. 1993).

 Plaintiff claims that he suffered a physical impact when Powell pushed herself against him in an attempt to prevent him from leaving the June 2, 1995 meeting with Henderson. Even if this incident constitutes a physical impact, the plaintiff cannot succeed on his claim because there was no demonstrable physical injury. *See Landry v. Florida Power & Light Corp.*, 799 F.Supp. 94, 96 (S.D.Fla.1992) (stating that physical injury is a predicate to recovery for negligent infliction of emotional distress and psychological trauma alone is not sufficient). Plaintiff's claim that he suffered a back injury as a result of the impact is unsubstantiated. Dr. Rankin had a session with the plaintiff ten days after the incident, but did not treat him for back or neck pain. Furthermore, he did not prescribe any medication for back pain and he did not notice that the plaintiff was having any problems with his back or neck. (Doc. 28, Ex. 4, Rankin Depo. at 36–37).

Because a claim for emotional distress is intrinsically speculative and difficult to determine, the requirements of physical impact and physical injury are essential to succeed on a cause of action for negligent infliction of emotional distress. The plaintiff has offered no evidence showing a physical injury as a result of his collision with Powell. Therefore, summary judgment in favor of the defendants on Count VII is warranted.

### III. Conclusion

For all of the reasons set forth above, the court finds that the plaintiff failed to establish retaliation in violation of the FMLA and discrimination in violation of the ADA. Furthermore, the plaintiff has not shown a violation of the Rehabilitation Act, false imprisonment, assault, intention-

al infliction of emotional distress or negligent infliction of emotional distress. There being no issue of material fact which prevents the entry of judgment, the court **GRANTS** the defendants' motion for summary judgment (Doc. 27) on all of the plaintiff's claims. Additionally, the court **DENIES** defendants' motion to strike (Doc. 37). The court directs the clerk of court to enter the appropriate judgment and to close the case.